## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **JUSTIN GIBBS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2021-cv-6277** |
| | ) | |
| | ) | |
| **ABT ELECTRONICS, INC. and** | ) | **TRIAL BY JURY DEMANDED** |
| **RICKY ABT, individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff, Justin Gibbs, through his counsel, Vucko Law LLP, states:

## NATURE OF PROCEEDING

This is an action under 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. §1981, the Americans with Disabilities Act ("ADA"), the Illinois Human Rights Act, 775 ILCS §5/2-101 *et seq.*, the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.*, the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et. seq.*, and Illinois common law. While Plaintiff Justin Gibbs worked for ABT Electronics, Inc., he was victimized and subjected to abuse because of his race, color, national origin and disability. Mr. Gibbs suffers from an autoimmune disease and vitiligo, a disease which causes his skin to lose its pigmentation in patches which grow bigger over time. During his employment with ABT, Caucasian and Hispanic supervisors and coworkers harassed him, used racial slurs, called him a "nigger" multiple times, embarrassed and attempted to intimidate him, docked his pay and/or issued unfair and fabricated fines against his compensation, subjected him to inhumane working conditions, and mocked his health conditions, using them as

1

a way to punish Gibbs for speaking out against its oppressive and unlawful practices, among other things. Gibbs's claims arise from Defendants' discriminatory conduct toward him during his employment period. Additionally, although ABT regularly required Gibbs to work through all or part of his meal breaks, ABT subjected Gibbs to automatic payroll deductions for meal breaks during which he actually worked.

## THE PARTIES

1.     Plaintiff Justin Gibbs ("Gibbs" or "Plaintiff") is a citizen of Illinois. Gibbs was employed by ABT Electronics, Inc. as an "employee" as defined by Title VII,  the ADA, the FLSA, the IWPCA, and the Illinois Human Rights Act ("IHRA"), 775 ILCS §5/2-101(A).

2.      Defendant ABT Electronics, Inc. ("ABT") is an Illinois corporation with its headquarters in Glenview, Illinois. Defendant is a retailer which sells consumer electronics, appliances and furniture, both online and via its brick-and-mortar store in Glenview, Illinois. Defendant is and was at all relevant times an "employer" as defined in Title VII, the ADA, the FLSA, the IWPCA, 42 U.S.C. §2000e(b) and the IHRA, 775 ILCS §5/2-101(B).

3.     ABT is a family-owned business founded in 1936 and is presently owned and operated by members of the Abt family, including without limitation Ricky Abt.

4.     At all times relevant hereto, ABT's annual revenue exceeded $500,000.

5.     ABT is an "enterprise" as defined in 29 U.S.C. §203(r)(1) and is an "enterprise engaged in commerce" within the meaning of 29 U.S.C. §203(s)(1)(A).

6.     Ricky Abt is a co-owner of ABT. Ricky Abt is Caucasian. On information and belief, Ricky Abt is a citizen of Illinois.

7.     Ricky Abt is an "employer" as defined in the FLSA and the IWPCA.

## JURISDICTION AND VENUE

2

8.     This Court has jurisdiction over Counts I - V and X of this action pursuant to 28 U.S.C. §1331 because these claims arise under the laws of the United States.  This Court has supplemental jurisdiction over Counts VI – IX pursuant to 28 U.S.C. § 1367 because these claims are so related to claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  This Court also has jurisdiction pursuant to 42 U.S.C. §2000(e)-(5)(f)(3) because the unlawful employment practices alleged in Plaintiff's Complaint were committed here.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (2) because Defendant does business here and/or did business here during the relevant time period and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

10.     Gibbs has exhausted his administrative remedies and his filing of this action is timely.

## BACKGROUND

11.     Gibbs is Black and is African American.

12.     Gibbs suffers from vitiligo, an autoimmune disease which causes his skin to lose its pigmentation in patches which grow bigger over time, and anxiety associated with this condition (collectively "Health Conditions").

13.     For background, vitiligo gained public attention via pop artist Michael Jackson who famously suffered from the same condition.

14.     Due to the nature of vitiligo, it may be more noticeable in dark-skinned people, because of the contrast between affected and unaffected areas of skin.

15.     On or about February 20, 2017, ABT hired Gibbs as a "Helper."

16.     Gibbs worked for ABT as a "Helper" from approximately February 20, 2017 until approximately April 19, 2020. ("Employment Period").

## ABT SUBJECTS GIBBS TO ONGOING HARASSMENT AND DISCRIMINATION BECAUSE OF HIS RACE AND DISABILITIES

17.     During Gibbs's, Employment Period, Gibbs was subjected to an ongoing course of mistreatment.

18.     Caucasian and Hispanic employees of ABT harassed Gibbs, used racial slurs, called him a "nigger" multiple times, mocked and preyed upon his Health Conditions, embarrassed him and attempted to intimidate him.

19.     For example, Gibbs's coworker, Austin Abt, mocked Gibbs, his Health Conditions and his skin pigmentation.

20.     Austin Abt bullied and embarrassed Gibbs in front of multiple co-workers, including without limitation by asking Gibbs how he "made [his] skin like that?"

21.     Austin Abt laughed and said he wanted to do the same thing to his skin, chuckling how "cool" it was.

22.     Gibbs explained to Austin Abt that this was not a topic he liked to discuss with people, but Austin Abt persisted in his line of ridicule and questioning.

23.     Gibbs's direct supervisor at ABT was Billy Govis.

24.     Govis is Caucasian.

25.     Gibbs complained to Govis about Austin Abt's conduct.

26.     Govis laughed and said treatment like that was to be endured when it comes to a guy "whose name is on your uniform."

27.     Govis denied that Gibbs was bullied.

28.     As another example, Gibbs's coworker Robert Isho called Gibbs a "nigger" and used the n-word multiple times in Gibbs's presence.

29.     Gibbs's coworker Jesus Mendoza Rodriguez, who is Hispanic and goes by the name "Chico", also called Gibbs a "nigger."

30.     Gibbs objected to the use of racial slurs.

31.     He complained to Govis about his coworkers calling him the n-word.

32.     Govis failed to take remedial action.

33.     In fact, Govis once responded to Gibbs's complaints of discrimination by saying, "Oh well Gibbs, I don't use the n-word *like that*," implying that he not only uses the word, but that he approves of its use in certain contexts.

### GIBBS COMPLAINS TO ABT MULTIPLE TIMES OF DISCRIMINATION; ABT'S HR MANAGER TELLS GIBBS HE DOESN'T "GIVE A SHIT" ABOUT GIBBS

34.     Gibbs complained to ABT many times about discrimination, including without limitation the use of racial slurs in the workplace and Govis's failure to take action in response to Gibbs's complaints, including without limitation to ABT's Human Resources manager and to Ricky Abt, the co-president of ABT.

35.     ABT failed to take remedial action.

36.     ABT's Human Resources manager told Gibbs that he didn't "give a shit" about Gibbs and was sick of Gibbs coming into work and, in his words, "playing the role of the victim."

37.     ABT treated Gibbs's similarly situated coworkers who were not Black and/or African American and/or of Gibbs' national origin and/or who did not have Health Conditions (collectively "Protected Characteristics") more favorably than ABT treated Gibbs.

38.     Gibbs's similarly situated co-workers who did not share his Protected Characteristics enjoyed better terms and conditions of employment, including without limitation better job advancement and compensation.

39.     ABT singled out Gibbs and his Black co-worker for unfair treatment, including without limitation through unfair scheduling and delivery assignments and more severe punishment(s) including by way of its arbitrary and discriminatory system of bonuses, and fines against the same.

40.     When Gibbs was partnered to work alongside another black co-worker, Shane Wideman, Shane Wideman observed that both he and Gibbs were targeted and suffered discrimination and mistreatment as compared against certain employees such as Chico.

41.     ABT favored Chico over Gibbs.

42.     Chico informed Gibbs that Chico's national origin is Mexican, and Ricky Abt and the Abt family were aware of Chico's national origin.

43.     Gibbs was treated less favorably than his similarly situated coworkers who were of Mexican national origin.

44.     ABT allowed Chico to call Gibbs a "nigger" without discipline or other consequences.

45.     ABT assigned Chico to more favorable positions and assignments, including the position of "lead" and otherwise gave Chico preferential treatment.

46.     On information and belief, Chico was less qualified for the position than Gibbs.

47.     Despite this fact, ABT would designate Chico as a "lead."

48.     Typically a "lead" is a driver.

49.     As a U.S. citizen legally authorized to work in America, Gibbs was able to secure and did secure driving credentials which certain employees outside of Gibbs' protected class, such as Chico, were unable to attain.

50.     Rather than require Chico to attain certain driving credentials traditionally otherwise required of a "lead" driver, ABT tasked Gibbs with driving Chico around.

51.     ABT also singled Gibbs out and docked his pay, issued "fines" against his compensation, made false accusations about him, and issued pretextual discipline to him.

52.     Utilizing a discriminatory bonus and fine scheme as a means of pressuring employees, ABT and Ricky Abt regularly required Gibbs and certain of his co-workers to work under conditions of extremely tight scheduling to service numerous ABT customers in a single workday.  Failure to meet the schedule resulted in negative consequences under said scheme.

53.     ABT and Ricky Abt were aware that as a result of the abovementioned scheme and scheduling, its employees, including Gibbs, would often be required to miss meal breaks which were automatically deducted from their pay regardless.

54.     ABT and Ricky Abt were aware that as a result of the abovementioned scheme and unfair scheduling, multiple of ABT's employees, including without limitation Chico, engaged in a practice of urinating into empty bottle(s) instead of taking a proper bathroom break during the workday.  In fact, in multiple instances ABT issued discipline to certain of its employees for being caught with one or more urine bottle(s) within their ABT-provided service vehicle(s).

55.     ABT and Ricky Abt knew that ABT's practices and procedures were causing employees to work through their meal breaks and other breaks, even to the extreme that multiple employees resorted to urinating into bottles rather than taking a proper bathroom break.

56.     ABT, including Ricky Abt, knew or acted with reckless disregard in causing Gibbs to work through meal breaks while automatically deducting pay for time attributed to meal breaks that he didn't take.  ABT's willfulness is demonstrated by, or can reasonably be inferred from, ABT's actions and/or failure to act to remediate workplace conditions upon learning of its employee(s) urinating into bottle(s) in the course of their workday(s).

57.     ABT and Ricky Abt had a strong financial motive to violate the FLSA and IWPCA by causing Gibbs to skip meal breaks while deducting time from Gibbs' pay which ABT attributed to meal breaks that Gibbs did not take.

58.     ABT and Ricky Abt had actual, and/or constructive knowledge, that Gibbs sustained automatic deductions from his compensation for meal breaks even when Gibbs worked through those breaks.

59.     Although ABT regularly required Gibbs to work through all or part of his meal breaks, ABT and Ricky Abt regularly subjected Gibbs to automatic payroll deductions for time attributed to meal breaks that Gibbs didn't take.

60.     ABT wrongly disciplined Gibbs in connection with a urine bottle it found and disciplined him more severely than similarly situated employees outside of his protected class(es), including without limitation Chico.

61.     On information and belief, ABT singled Gibbs out for more intrusive pre-employment screenings than it utilized for certain individuals outside of his protected classes.

**ABT AND GOVIS RETALIATE AGAINST GIBBS**

62.     Govis became aware that Gibbs had complained to ABT.

63.     Govis taunted Gibbs about his knowledge of Gibbs's complaints, including by texting Gibbs a poop emoji blowing a kiss the day after Gibbs complained to Ricky Abt.

8

64.     Gibbs escalated the matter to Ricky Abt.

65.     ABT held a meeting with Gibbs and multiple others, including Govis and Ricky Abt.

66.     ABT attempted to intimidate Gibbs by falsely accusing Gibbs of faking the poop emoji text.

67.     Ricky Abt summoned his IT workers to opine as to whether Gibbs faked the text.

68.     Ricky Abt decided to involve the Glenview Police Department to devote the police department's resources to investigate whether the poop emoji was (a) sent to Gibbs by Govis; or (b) some sort of digital fake created by Gibbs to frame Govis, as alleged by Govis.

69.     On information and belief, at least one member of ABT has a connection with the Glenview police force.

70.     Ricky Abt appears to have relationships with certain police officers and his conduct caused Gibbs to believe that he enjoys involving police in matters when he can, in part to emphasize his influence, power and clout within the community.

71.     While the Glenview Police Department's investigation of Govis's poop emoji was underway, Ricky Abt claimed to Gibbs that it was important to find out the truth so appropriate action could be taken. He said this in part to intimidate Gibbs and prey upon Gibbs's anxiety.

72.     The Glenview Police Department concluded its investigation and found no evidence that Gibbs had faked the text.

73.     The Glenview Police Department concluded that Govis was responsible for the issuance of the text.

74.     ABT failed to take remedial action against Govis.

**AFTER GOVIS RETALIATES, ABT AWARDS GOVIS THE
<u>EMPLOYEE OF THE YEAR AWARD</u>**

9

75.    After Gibbs complained to Ricky Abt about Govis, ABT awarded Govis the Employee of the Year Award.

76.    In November of 2019, Ricky Abt contacted Gibbs to single him out and tell him that he didn't want Gibbs to wear a facemask around customers at work.

77.    For background, Gibbs then wore and continues to wear today a facemask at times, particularly during cold weather, due to his Health Conditions.

78.    Gibbs engaged in this practice openly since his employment began.

79.    Numerous other ABT employees then had a history of wearing facemasks, but they did not face this same prohibition.

## ABT FIRES GIBBS AFTER HE TELLS ABT
## THAT HE HAS RETAINED A LAWYER

80.    In April 2020, Gibbs requested his personnel file and disclosed to ABT that he had retained a lawyer.

81.    The next day, at the start of Gibbs's shift, Ricky Abt summoned Gibbs to meet with him. He was upset that Gibbs had engaged a lawyer.

82.    Ricky Abt claimed to Gibbs that Gibbs's employment was in peril, citing a pretextual reason. Ricky Abt questioned Gibbs as to whether he wanted to continue working at ABT.

83.    Gibbs again repeated a number of his complaints of discrimination to Ricky Abt.

84.    Ricky Abt responded by saying, "I'm still the fucking boss."

85.    Ricky Abt sent Gibbs home for the day without permitting Gibbs to complete his shift.

86.     The next day, Govis texted Gibbs to notify Gibbs that he was terminated from employment with ABT.

87.     ABT continued to retaliate against Gibbs after his termination, including without limitation by failing to timely pay Gibbs his final paycheck, by contesting his unemployment benefits in bad faith, and by its ongoing prohibition against Gibbs visiting ABT's store as a customer.

**COUNT I**
**VIOLATION OF 42 U.S.C. § 2000(e) *et seq.* ("Title VII")**
**NATIONAL ORIGIN/ RACE/ COLOR DISCRIMINATION (DISPARATE**
**TREATMENT, HARASSMENT, HOSTILE WORK ENVIRONMENT)**
**AGAINST DEFENDANT ABT**

88.     Gibbs realleges and incorporates by reference Paragraphs 1 through 87 above.

89.     Pursuant to Title VII, Gibbs is a member of a "protected class" because he is Black, is African American and is a United States citizen who was born in the U.S.

90.     Gibbs met or exceeded Defendant's legitimate job expectations during his Employment Period.

91.     Defendant took one or more adverse actions against Gibbs because of his national origin, race and/or color.

92.     Defendant subjected Gibbs to an objectively and subjectively offensive workplace.

93.     Defendant subjected Gibbs to harassment on the basis of Gibbs's race, color and/or national origin.

94.     The discriminatory and harassing conduct was severe and pervasive.

95.     Defendant treated similarly situated employees who were not Black or African American more favorably than it treated Gibbs.

96.     Defendant knew or should have known about its employees' discriminatory conduct.

97.     Defendant unreasonably failed to take remedial action for its employees' discriminatory conduct.

98.     Defendant's discriminatory conduct was intentional.

99.     Defendant's conduct was done with malice or reckless indifference to Gibbs's rights under federal law.

100.    Gibbs was damaged by Defendant's discriminatory conduct in violation of Title VII. His damages include, but are not limited to, his lost wages, damage to his career, lost benefits, future pecuniary losses, inconvenience, emotional and psychological harm and other harm.

**COUNT II**
**VIOLATION OF 42 U.S.C. § 2000(e) *et seq.* ("Title VII")**
**RETALIATION**
**AGAINST DEFENDANT ABT**

101.    Gibbs realleges and incorporates by reference Paragraphs 1 through 87 above.

102.    Pursuant to Title VII Gibbs is a member of a "protected class" because he is Black, is African American and he is a United States citizen who was born in the U.S.

103.    Gibbs engaged in statutorily protected expression under Title VII, including by complaining to ABT and Ricky Abt about discrimination.

104.    Defendant took one or more adverse actions against Gibbs because he engaged in statutorily protected expression.

105.    Defendant treated Gibbs's similarly situated coworkers who did not engage in statutorily protected activity more favorably than it treated Gibbs.

106.    Defendant knew or should have known about its employees' discriminatory conduct.

107.   Defendant unreasonably failed to take remedial action for its employees' discriminatory conduct.

108.   Defendant's discriminatory conduct was intentional.

109.   Defendant's conduct was done with malice or reckless indifference to Gibbs's rights under federal law.

110.   Gibbs was damaged by Defendant's discriminatory conduct in violation of Title VII. His damages include, but are not limited to, his lost wages, damage to his career, lost benefits, future pecuniary losses, inconvenience, emotional and psychological harm and other harm.

## COUNT III
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (42 U.S.C.S. §12101 *et seq.*)
## DISPARATE TREATMENT, HARASSMENT AND HOSTILE WORK ENVIRONMENT

111.   Gibbs realleges and incorporates by reference Paragraphs 1 through 87 above.

112.   During his Employment Period, Gibbs had an autoimmune disease, vitiligo, and anxiety associated therewith, which substantially limited one or more of his major life activities and which qualify as disabilities under the Americans with Disabilities Act (42 U.S.C.S. § 12102).

113.   ABT regarded Gibbs as having a disability.

114.   There was a record of Gibbs having a disability.

115.   Gibbs was qualified to perform the essential functions of his job with or without reasonable accommodations.

116.   Defendant took one or more adverse actions against Gibbs because of his disabilities.

117.    Defendant's discriminatory and harassing conduct was sufficiently severe or pervasive to alter the conditions of Gibbs's employment and create a hostile or abusive atmosphere.

118.    Defendant knew or should have known about the discriminatory conduct.

119.    Defendant unreasonably failed to take remedial action for the discriminatory conduct.

120.    Defendant's discriminatory conduct was intentional.

121.    Defendant's conduct was done with malice or reckless indifference to Gibbs's rights under federal law.

122.    Gibbs was damaged by Defendant's discriminatory conduct in violation of the Americans with Disabilities Act. Gibbs's damages include, but are not limited to, his lost wages, damage to his career, lost benefits, future pecuniary losses, inconvenience, embarrassment, emotional and psychological harm and other harm.

### COUNT IV
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (42 U.S.C.S. §12101 *et seq.*)
### RETALIATION

123.    Gibbs realleges and incorporates by reference Paragraphs 1 through 87 above.

124.    During his Employment Period, Gibbs had an autoimmune disease, vitiligo and anxiety associated therewith, which substantially limit one or more of his major life activities and which qualify as disabilities under the Americans with Disabilities Act (42 U.S.C.S. § 12102).

125.    Gibbs was performing his job in a satisfactory or above-satisfactory manner.

126.    Gibbs engaged in statutorily protected activity under the ADA, including without limitation by complaining to ABT and Ricky Abt about the discrimination and harassment to which he was subjected.

14

127. After Gibbs engaged in Protected Activity, ABT took one or more adverse actions against Gibbs.

128. On information and belief, ABT did not subject other, similarly situated employees who did not engage in Protected Activity to an adverse employment action.

129. ABT's discriminatory conduct was intentional.

130. ABT's conduct was done with malice or reckless indifference to Gibbs's rights under federal law.

131. Gibbs was damaged by ABT's discriminatory conduct in violation of the Americans with Disabilities Act. Gibbs's damages include, but are not limited to, his lost wages, damage to his career, lost benefits, future pecuniary losses, inconvenience, embarrassment, emotional and psychological harm and other harm.

**COUNT V**
**VIOLATION OF 42 U.S.C. § 1981**
**DISCRIMINATION AND RETALIATION**
**AGAINST DEFENDANT ABT AND RICKY ABT, INDIVIDUALLY**

132. Gibbs realleges and incorporates by reference paragraphs 1 through 87 above.

133. Gibbs is a member of a racial or ethnic minority because he is African American and Black.

134. Defendant had the intent to discriminate against Gibbs on the basis of his ethnicity and/or national origin.

135. The discrimination concerned the making or enforcing of a contract – namely, Gibbs's employment relationship with Defendant.

136. Gibbs engaged in legally protected activity by complaining to Defendant on multiple occasions about the harassment and discrimination.

137. Gibbs suffered one or more adverse employment actions.

138. ABT took one or more adverse actions against Gibbs because of his ethnicity and/or national origin.

139. ABT took one or more adverse actions against Gibbs because of his protected activity.

140. Defendant Ricky Abt was personally involved in the acts of discrimination.

### COUNT VI
### VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT
### (775 ILCS 5/2-101 *et seq.*)
### DISPARATE TREATMENT, HARASSMENT, HOSTILE WORK ENVIRONMENT, RETALIATION, FAILURE TO ACCOMMODATE AGAINST DEFENDANT ABT

141. Gibbs realleges and incorporates by reference paragraphs 1- 140 above.

142. Pursuant to the Illinois Human Rights Act, Gibbs is a member of a "protected class" because of his color, race, national origin and disability.

143. Defendant's conduct was done with malice or reckless indifference to Gibbs's rights under Illinois law.

144. Gibbs was damaged by Defendant's discriminatory conduct in violation of the IHRA. His damages include, but are not limited to, his lost wages, damage to his career, lost benefits, future pecuniary losses, inconvenience, emotional and psychological harm and other harm.

### COUNT VII
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### AGAINST DEFENDANT ABT AND RICKY ABT, INDIVIDUALLY

145. Plaintiff realleges and incorporates by reference paragraphs 1-87 above.

146. Defendants subjected Gibbs to extreme and outrageous conduct.

147.    Defendants intended that their conduct inflict severe emotional distress on Gibbs or recklessly or consciously disregarded the high probability that their conduct would cause Gibbs severe emotional distress.

148.    Defendants' conduct caused Gibbs severe or extreme emotional distress.

**COUNT VIII**
**ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT**
**(740 ILCS 14/1 et seq.)**
**AGAINST DEFENDANT ABT**

149.    Plaintiff realleges and incorporates by reference paragraphs 1 - 87 above.

150.    During Plaintiff's Employment Period, ABT required Plaintiff to have his fingerprints scanned by a biometric timekeeping device each time he had to clock in or out.

151.    Defendant violated the Biometric Information Privacy Act ("BIPA") because it did not:

a.    Provide a publicly available retention schedule or guidelines for permanent destruction of the biometric data, as required by BIPA;

b.    Inform Plaintiff, in writing before on or about July 21, 2017, that a biometric identifier or his biometric information was being collected and stored, as required by BIPA;

c.    Inform Plaintiff in writing before on or about July 21, 2017 of the specific purpose and length of time for which his fingerprints were being collected, stored, disseminated and used, as required by BIPA;

d.    Receive a written release from Plaintiff before on or about July 21, 2017 to collect, store, disseminate or otherwise use his fingerprints, as required by BIPA.

152.    Plaintiff was aggrieved because he was not:

a. Informed in writing that his biometric identifier or biometric information was being collected and stored before on or about July 21, 2017;

b. Informed in writing of the length of time for which his fingerprints were being collected, stored, disseminated and used before on or about July 21, 2017;

c. Provided a publicly available retention schedule or guidelines for permanent destruction of the biometric data; and

d. Provided (nor did he execute) a written release before on or about July 21, 2017, as required by BIPA.

153. Upon information and belief, ABT improperly disclosed Plaintiff's fingerprint data to at least one third-party vendor during certain times in Plaintiff's Employment Period.

154. ABT is liable for and had actual knowledge of the BIPA violations alleged herein.

155. Upon information and belief, Defendant lacked retention schedules and guidelines for permanently destroying Plaintiff's data during Plaintiff's Employment Period as required by BIPA during certain times in Plaintiff's Employment Period.

156. Plaintiff has been injured by Defendant's violation of his legal rights.

157. This violation raised a material risk that Plaintiff's biometric data would be unlawfully accessed by third parties, and that Plaintiff would be subject to identity theft or other privacy or economic harm that could result from the dissemination of his biometric information.

158. Because of Defendant's failure to comply with BIPA, Plaintiff was deprived of the opportunity to make an informed choice about whether the terms of Defendant's collection and usage of his biometric information were acceptable to him given the attendant risks.

159. Defendant's violations of BIPA were each willful, intentional and/or reckless.

160. In the alternative, Defendant's violations of BIPA were negligent.

**COUNT IX**
**ILLINOIS WAGE PAYMENT AND COLLECTION ACT**
**(820 ILCS 115/1 *et seq.*)**
**AGAINST DEFENDANTS ABT & RICKY ABT**

161. Plaintiff realleges and incorporates by reference paragraphs 1-87 above.

162. ABT regularly caused Gibbs to miss scheduled meal breaks.

163. ABT subjected Gibbs' pay to automatic deductions for meal breaks that were not taken by Gibbs. In other words, ABT failed to pay Gibbs for time worked.

164. Ricky Abt knowingly caused or permitted these violations to occur.

165. At all relevant times hereto, Ricky Abt possessed day-to-day authority over Plaintiff's and other employees' terms and conditions of employment, including without limitation the authority to hire and fire, make pay decisions, and otherwise control Gibbs's work conditions.

166. Ricky Abt, at all relevant times hereto, was a corporate officer with significant control over portions of the ABT enterprise.

167. Some of these automatic deductions occurred in workweeks during which Gibbs worked more than 40 hours per week and thus resulted in Gibbs not receiving overtime compensation to which he was entitled.

168. ABT failed to pay Gibbs his wages for all hours which he worked when he worked through meal breaks.

**COUNT X**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**(29 U.S.C. § 201 *et seq.*)**
**AGAINST DEFENDANTS ABT & RICKY ABT**

169. Plaintiff realleges and incorporates by reference paragraphs 1-87 above.

170. The FLSA defines employer broadly to include "any person acting directly of indirectly in the interest of an employer in relation to an employee . . . " 29 U.S.C. § 203(d).

171. ABT and Ricky ABT, at all times relevant hereto, were subject to the wage requirements of the FLSA because they were employers engaged in interstate commerce as per 29 U.S.C. §203(d).

172. At all relevant times hereto, Ricky Abt possessed day-to-day authority over Plaintiff's and other employees' terms and conditions of employment, including without limitation the authority to hire and fire, make pay decisions, and otherwise control Gibbs's work conditions.

173. Ricky Abt, at all relevant times hereto, was a corporate officer with significant control over portions of the ABT enterprise.

174. ABT and Ricky Abt knowingly regularly caused Gibbs to miss scheduled meal breaks.

175. ABT subjected Gibbs' pay to automatic deductions for meal breaks even when Gibbs worked through those breaks. In other words, ABT and Ricky Abt knowingly failed to pay Gibbs for time worked by Gibbs.

176. Some of these automatic deductions occurred in workweeks during which Gibbs worked more than 40 hours per week and thus resulted in Gibbs not receiving overtime compensation to which he was entitled.

177. Gibbs was not exempt from the requirements of the FLSA.

178. Gibbs is entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

179. ABT and Ricky Abt, pursuant to its policies and practices, willfully failed and refused to pay compensation and certain overtime compensation to Gibbs for his hours worked

which were subjected to automatic payroll deduction attributed by ABT and Ricky Abt to meal breaks not taken by Gibbs.

180.   Ricky Abt is individually liable under the FLSA for ABT's violations, including without limitation, because he is an owner of ABT who established and/or was responsible for enforcing ABT's employment policies, including the company's pay policies and compliance with applicable state and federal law; Ricky Abt exercised control over Gibbs' work; Ricky Abt played an important role in making personnel decisions for ABT and had the authority to hire and fire employees; Ricky Abt exercised day-to-cat control of operations for ABT; Ricky Abt supervised and had control over Gibbs' work schedule and conditions of employment and had control over Gibbs' supervisor William Govis.

181.   ABT failed to pay Gibbs his wages for all hours which he worked when he skipped meal breaks.

182.   ABT and Ricky Abt willfully failed to compensate Gibbs at a rate of one and one-half (1.5) times his regular hourly wage for hours worked in excess of forty (40) per week , in violation of 29 U.S.C. §207(a)(1).

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against Defendant ABT Electronics, Inc. and Ricky Abt, jointly and severally, as follows:

A.   Declare Defendants' conduct to violate the rights guaranteed to Plaintiff under 42 U.S.C. § 1981, Title VII, the Americans with Disabilities Act, the Illinois Human Rights Act, and the Biometric Information Privacy Act.;

B.      Grant a permanent injunction restraining Defendant, its officers and employees and all persons in active concert or participation with Defendant from engaging in any employment practice which unlawfully discriminates on the basis race, national origin, color or a disability;

C.      Award Plaintiff (1) statutory damages of $5,000.00 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS14/20 or, in the alternative, (2) statutory damages of $1,000.00 for each negligent violation of BIPA pursuant to 740 ILCS 14/20;

D.      Order Defendants to make Plaintiff whole by providing the affirmative relief necessary to eradicate the effects of Defendants' unlawful practices;

E.      Grant Plaintiff consequential, compensatory, nominal, and any other damages, including backpay, additional backpay to account for the negative tax consequences of a lump-sum payment and damages for emotional pain, distress, and suffering and mental anguish, in an amount to be determined at trial, against Defendants;

F.      Grant Plaintiff punitive damages against Defendants;

G.      Grant Plaintiff such equitable and injunctive relief that the Court may deem appropriate;

H.      Grant Plaintiff his attorneys' fees, costs, pre-judgment and post-judgment interest and disbursements pursuant to Title VII, the ADA, 42 U.S.C. §1981, the Illinois Human Rights Act, the Biometric Information Privacy Act, the IMWL and the FLSA;

I.       Award Plaintiff back pay damages (including overtime compensation and unpaid wages) equal to the amount of all unpaid wages for the three (3) years preceding the filing of this Complaint (according to the applicable statute of limitations for willful violations of the FLSA);

J.      Award Plaintiff liquidated damages in an amount equal to the amount of unpaid compensation found due pursuant to 29 U.S.C. §216(b)

K.      Award Plaintiff prejudgment interest in an amount equal to the amount of unpaid compensation;

L.      Grant Plaintiff injunctive relief precluding ABT and Ricky Abt from further FLSA and IMWL violations;

M.      Award Gibbs compensatory damages, including unpaid wages, interest at a rate of 2% of the underpayment per month under the IMWL; and

N.  Grant Plaintiff such further relief as the Court deems necessary and proper.

## **DEMAND FOR JURY TRIAL**

183.    Plaintiff demands trial by jury on all counts and issues so triable.

Respectfully Submitted,

/s/___Stacey Vucko_____
STACEY VUCKO
One of Plaintiff's Attorneys

Dated: November 22, 2021

STACEY B. VUCKO
JOSEPH W. VUCKO
VUCKO LAW LLP
2208 Midwest Rd., Suite 104
Oak Brook, IL 60523
312-522-2517
svucko@vuckolaw.com