UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUSTIN GIBBS, | ) |
|           Plaintiff, | ) |
|     v. | ) 21 C 6277 |
| ABT ELECTRONICS, INC., and RICKY ABT, individually, | ) |
|           Defendants. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants Abt Electronics Inc. ("Abt") and Ricky Abt's ("Ricky") (collectively, "Defendants") Motion to Dismiss Portions of Plaintiff Justin Gibbs' Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants the Motion in part.

## BACKGROUND

For the purposes of this Motion, the Court accepts as true the following facts from the Complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Gibbs' favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

Gibbs, an African American man, began working at Abt as a helper in February 2017. Dkt. # 1, ¶¶ 11, 15. Gibbs suffers from vitiligo, an autoimmune disease which

causes his skin to lose its pigmentation in patches that grow bigger over time, as well as anxiety. *Id*. at ¶ 12.

Throughout his time at Abt, Gibbs was allegedly subjected to ongoing discrimination because of his race and health conditions. *Id*. at ¶¶ 17–33. For example, various Abt employees harassed Gibbs by using racial slurs, mocking him for his health conditions, and embarrassing him by attempting to intimidate him. *Id.* at ¶ 18. More specifically, Gibbs' co-worker, Austin Abt, bullied him by asking, in front of multiple employees, how Gibbs "made [his] skin like that," referring to his vitiligo. *Id*. at ¶ 20. Also, Gibbs alleges other co-workers called him the "n-word" on multiple occasions. *Id.* at ¶¶ 18, 29. Gibbs complained to his direct supervisor, Billy Govis, and Abt's human resources manager about the use of racial slurs in the workplace but they both failed to take any action. *Id*. at ¶¶ 34–37. In fact, the human resources manager stated he "didn't give a shit" about Gibbs. *Id*. at ¶ 36.

Meanwhile, Gibbs and his African American co-workers were subjected to unfair treatment, including unfair scheduling and delivery assignments, and more severe, yet arbitrary punishments. *Id.* at ¶¶ 38–61. He also claims Abt utilized a discriminatory bonus system and imposed unfair fines against Black employees. *Id*. at ¶ 39. For example, Gibbs and his Black co-workers were required to work under conditions of extremely tight scheduling to service numerous Abt customers in a single workday, which required them to miss meal breaks and urinate in empty bottles to avoid taking proper bathroom breaks. *Id.* at ¶¶ 53–54. Yet, Gibbs says he was still subjected

to automatic payroll deductions for breaks he did not take, and more severely disciplined for urinating in bottles than other similarly situated employees. *Id*. Gibbs claims Abt and Ricky, the Co-President of Abt, were aware of the discriminatory employment scheme and unfair practices. *Id*. ¶¶ 54–58.

When Govis became aware of Gibbs' complaints to Abt, he began to taunt Gibbs, including sending Gibbs "a poop emoji blowing a kiss" the day after Gibbs complained to Ricky. *Id.* at ¶¶ 62–74. Abt accused Gibbs of fabricating the text exchange, but an investigation by the Glenview Police Department revealed Govis sent the text. *Id*. at ¶ 72. Govis was never disciplined for the text; instead he was awarded Employee of the Year shortly thereafter. *Id*. at ¶¶ 74–75.

Because of his disability, Gibbs says he would wear a facemask at times, particularly during cold weather. *Id.* at ¶ 77. In November 2019, Abt contacted Gibbs to tell him he could no longer wear a facemask around customers at work. *Id*. at ¶ 76. Other employees also wore facemasks, but Gibbs was the only worker to be prohibited from this practice. *Id. at ¶ 79.

In April 2020, Gibbs requested his personnel file from Abt and informed Abt he retained an attorney. *Id.* at ¶ 80. Ricky met with Gibbs the following day because he was upset Gibbs retained a lawyer. *Id.* at ¶ 81. Abt told Gibbs his employment was in peril, "citing a pretextual reason." *Id.* at ¶ 82. At the meeting Gibbs reiterated his complaints of ongoing discrimination, to which Ricky responded, "I'm still the fucking boss." *Id*. at ¶¶ 83–84. Ricky then sent Gibbs home for the day. *Id.* at ¶ 85. The next

3

day, Govis informed Gibbs he was terminated. *Id.* at ¶ 86. Gibbs says Abt continued to subject Gibbs to retaliation after his termination by failing to timely pay Gibbs his final paycheck, contesting his employment benefits in bad faith, and by prohibiting him from visiting Abt's stores as a customer. *Id*. at ¶ 87.

Based on these events, Gibbs claims: (1) disparate treatment, harassment, and a hostile work environment based on his national origin, race, and color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*(Count I); (2) retaliation in violation of Title VII (Count II); (3) disparate treatment, harassment and hostile work environment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. (Count III); (4) retaliation in violation of the ADA (Count IV); (5) discrimination and retaliation in violation of 42 U.S.C. § 1981 (Count V); (6) disparate treatment, harassment, hostile work environment, retaliation, and failure to accommodate in violation of the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101, *et seq*. (Count VI); (7) intentional infliction of emotional distress ("IIED") (Count IV); (8) violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. (Count VIII); (9) violations of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq*. (Count IX); and (10) violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201, *et seq*. (Count X). Defendants now move to dismiss portions of Gibbs' Complaint.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not supply detailed factual allegations, but it must supply enough factual support to raise its right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow. . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the. . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Defendants urge the Court to dismiss portions of each count of Gibbs' Complaint. We address each count in turn.

**I.  Counts I & II: Title VII Claims**

5

Defendants argue Gibbs' Title VII claims should be dismissed because several of the alleged incidents occurred more than 300 days before Gibbs filed his charge with the Equal Employment Opportunity Commission ("EEOC").[1]

A plaintiff may file a Title VII claim in federal court only if the plaintiff filed a charge of discrimination with the EEOC within 300 days of the alleged discriminatory act. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). The limitations period in Title VII begins to run when "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e). In *Morgan*, the Supreme Court explained "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" for purposes of the limitations period for filing EEOC charges. 536 U.S. at 114. Thus, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113.

However, the Supreme Court distinguished claims involving discrete acts of discrimination from claims alleging a hostile work environment: "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Id*. at 115. Thus, a hostile work environment charge is timely as long as "any act falls within the statutory time period," even if the charge encompasses events occurring prior to the statutory time period. *Id.* at 120 (emphasis added).

---

[1] Gibbs did not attach the EEOC charge to his Complaint, but Defendants attach the charge to their Motion and Gibbs to his Response. The Court considers the charge because it is central to Gibbs' claims. *See Massenberg v. A&R Security Servs., Inc.*, 2011 WL 1792735, at *1 n.1 (N.D. Ill. 2011).

Importantly, this reasoning exclusively applies to hostile-work environment claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014). A Title VII plaintiff seeking redress for a series of discrete discriminatory acts cannot avoid the effect of the limitations period by arguing that the discrete acts are "plausibly or sufficiently related." *Morgan*, 536 U.S. at 111–14. To the contrary, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id*.

With respect to Gibbs' claims of disparate treatment and retaliation, the events occurring before August 16, 2019, are time-barred. But for Gibbs' hostile work environment claim, the question remains: are the alleged incidents discrete or are they related to one another? *See Morgan*, 536 U.S. at 117–18.

The Seventh Circuit has identified "various factors that should guide the *Morgan* 'relatedness' inquiry." *Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 852 (7th Cir. 2019). These factors include whether the acts involve the same subject matter, the frequency of the acts, and "the degree of permanence of the alleged acts of discrimination that should trigger an employee's awareness and duty to assert his rights." *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 708 (7th Cir. 2002). "The simplest factor is time: A significant gap between alleged incidents of discriminatory harassment can sever the hostile work environment claim." *Ford*, 942 F.3d 839.

Here, according to the EEOC charge, Gibbs was first called the n-word in March 2018. He was again called the slur in December 2018 and February 2019. Those three

incidents are clearly ongoing and related. But thereafter, other than very general conclusory allegations of racial disparities, Gibbs does not allege any acts that might constitute a hostile work environment. Gibbs does not allege the poop emoji incident, for example, was based on his race, but instead was in retaliation for his complaints to Ricky, which is a discrete act. *See Morgan*, 536 U.S. at 114. Additionally, Gibbs' firing occurred in April 2020, over a year after the last race-based incident, so it is another discrete act under *Morgan*. *Id.* At bottom, Gibbs knew (or should have known) the three race-based incidents were discriminatory—he repeatedly reported them to Govis and Ricky—and could have filed charges based on those incidents. *See Tinner*, 308 F.3d at 708 ("a plaintiff who feels discriminated against by a discrete act, but fails to timely file charges on that act, cannot later reach back to those events when the statute of limitations expires in order to form a continuing violation claim"). Thus, Gibbs cannot rely on the continuing violation doctrine to save his Title VII claims.

Accordingly, the Motion to Dismiss portions of Count I and II is granted. The acts occurring before August 16, 2019 are time-barred. Abt does not contest the viability of Gibbs' timely Title VII claims, which may proceed.

**II.    Count III & Count IV: ADA Discrimination and Retaliation Claim**

Defendants next argue portions of Gibbs' ADA claims are also untimely. Gibbs' Complaint appears to advance three instances of disability discrimination: (1) when Austin Abt mocked Gibbs for his skin condition in August 2017; (2) Ricky telling Gibbs to no longer wear a face mask in November 2019; (3) Gibbs' termination in April 2020.

8

Similar to Title VII claims, ADA claims are subject to a 300-day statute of limitations. *See* 42. U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e). The mocking in August 2017 is time-barred as it occurred over two years before the other alleged acts of disability discrimination; however, the remaining discriminatory acts that took place after August 19, 2019 are not time-barred.[2]

Defendants also argue Gibbs fails to state a disability retaliation claim. To state a claim for retaliation under the ADA, Gibbs must allege: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal link between the protected activity and the adverse action. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690 (7th Cir. 2010).

Here, Gibbs alleges he was terminated after a meeting with Ricky where he, among other things, repeated his complaints about discrimination. Though the Complaint does not specify what type of discrimination he complained about, the Court can reasonably infer Gibbs complained about the racial and disability discrimination he previously complained about. Thus, at this stage, Gibbs has established a disability retaliation claim.

### III. Count V: Section 1981 Claim

In Count V, Gibbs alleges Defendants violated Section 1981 by discriminating and retaliating against him based on his race, ethnicity, and national origin as an African

---

[2] To the extent Gibbs relies on the continuing violation doctrine, each incident is a discrete act, especially given the two-year gap.

American. Defendants first argue Gibbs' Section 1981 claim must be dismissed because it cannot be based on national origin, only race.

Section 1981 forbids "all 'racial' discrimination in the making of private as well as public contracts." *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987). The concept of "race" for purposes of Section 1981 has been broadly construed to include ancestry and ethnic characteristics. *See id.*; *Bisciglia v. Kenosha Unified Sch. Dist. No. 1*, 45 F.3d 223, 229–30 (7th Cir. 1995) (discussing *St. Francis College* and granting plaintiff leave to amend discrimination claim based on Italian ancestry); *Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 508–09 (N.D. Ill. 2012) (denying motion to dismiss a Section 1981 claim based on Pakistani ethnicity). But allegations of discrimination based solely on the place or nation of the plaintiff's origin are insufficient to state a claim under Section 1981. *See St. Francis Coll.*, 481 U.S. at 613. "In the absence of an allegation of racial animus, either explicit or reasonably inferable from the pleadings, plaintiff cannot maintain [a] section 1981 action." *Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir. 1984).

Count V makes clear that Gibbs brings his Section 1981 claim based on the fact that he is Black and African American. "While it is true that there is ambiguity in this case because 'race' and 'national origin' appear to coincide, that is not a sufficient basis for dismissing Plaintiffs' Section 1981 claims at this time." *Shamim*, 854 F. Supp. 2d at 509 (collecting cases); *see also Hickman v. Family Dollar, Inc.*, 2021 WL 4401498, at *5 (N.D. Ill. 2021) (denying motion to dismiss claim of color discrimination under

10

Section 1981 where the same facts supported both race and color discrimination claims). The allegations in the Complaint unquestionably suggest Gibbs may have been discriminated against because of his race and national origin. Accordingly, the Court declines to dismiss Gibbs' Section 1981 claims on this basis.

Defendants next argue the Section 1981 claim must be dismissed against Ricky because he was not personally involved in the alleged discrimination and retaliation. "A defendant may be personally liable if he acquiesced in some demonstrable way to the alleged constitutional deprivation, or if the conduct causing the constitutional deprivation occurred at his direction or with [his] knowledge and consent." *McQueen v. City of Chi.*, 803 F. Supp. 2d 892, 901 (N.D. Ill. 2011) (cleaned up).

Here, Gibbs alleges he repeatedly complained to Ricky about discrimination up to the time he was fired. Indeed, he was fired a day after the last complaint. Ricky—Abt's Co-President—claimed Gibbs' employment was in peril, and the next day Govis contacted Gibbs to notify him that he was fired. Gibbs alleges his termination was based on his race. Viewing these allegations in the light most favorable to Gibbs, he sufficiently alleges Ricky's personal involvement at this juncture. *See James v. TCA Health, Inc.*, 2021 WL 2853395, at *4 (N.D. Ill. 2021) (denying a motion to dismiss based on the defendant company's CEO's personal involvement). Accordingly, the Motion to Dismiss Count V against Ricky is denied.

## IV. Count VI: IHRA Claim

Count VI alleges race, color, national origin, and disability discrimination in violation of the IHRA. Defendants argue these claims must be dismissed under the statute of limitations. *See* 775 ILCS 5/7A-102(A-1). For the same reasons as Gibbs' Title VII and ADA claims, Gibbs' IHRA claims are limited to the events occurring after August 16, 2019.

## V. Count VII: IIED Claim

Defendants next argue Gibbs's IIED claim is preempted by the IHRA. The IHRA preempts some torts related to civil rights violations. *See Richards v. U.S. Steel*, 869 F.3d 557, 564 (7th Cir. 2017); *see also Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006). To determine whether a claim is preempted, "the concrete question to ask is whether the plaintiff states a valid common-law claim without needing to rely on the rights and duties created by the" IHRA. *Richards*, 869 F.3d at 564 (citing *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 519 (1997)). The Seventh Circuit has emphasized that the preemption test "rest[s] on an examination of legal duties, not on the factual" overlap between claims. *Id.*; *Naeem*, 444 F.3d at 603 n.4. Importantly, an IIED claim will be preempted "when the core of the plaintiff's theory [is] that the plaintiff was a victim of racial harassment." *Id.* at 604.

Here, Gibbs's IIED claim is entirely premised on Defendants' failure to remediate alleged racial harassment and disability discrimination in the workplace. Thus, the core of Gibbs's IIED theory is disability and racial discrimination based on

12

rights and duties created by the IHRA. *See id.*; *see also Smith v. City of Chi.*, 165 F.3d 1142, 1151 (7th Cir. 1999). Therefore, Gibbs's IIED claim is dismissed.

## VI. Count VIII: BIPA Claim

Defendants first argue Gibbs lacks Article III standing to bring a claim for violations of BIPA Section 15(a) under the Seventh Circuit's decision in *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020). Gibbs did not respond to this argument, thus waiving it. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver"). We therefore dismiss Gibbs' claims under BIPA Section 15(a) without prejudice for lack of standing. *See Bryant*, 958 F.3d at 626. *But see Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1152–56 (7th Cir. 2020) (clarifying standing requirements under BIPA Section 15(a)).

Defendants seek to stay the remaining BIPA claims in the hope that intervening court decisions will provide the legal clarity necessary to promptly and fairly resolve this case. Defendants argue the Illinois Supreme Court's decisions in *Cothron v. White Castle System, Inc.* and *Tims v. Black Horse Carriers, Inc.* have the potential to impact the viability of this lawsuit because a finding that a one-year statute of limitations applies to claims under BIPA would bar Plaintiff's claims entirely. And, a finding that claims under BIPA accrue just once at the time of the first use of an alleged biometric time clock would impact the size of any putative class, the scope of discovery, and potential liability in this matter.

The Court has "inherent power to exercise its discretion to stay proceedings to avoid unnecessary litigation of the same issues." *Munson v. Butler*, 776 F. App'x 339, 342 (7th Cir. 2019) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (Cardozo, J.)). In evaluating whether to grant a motion to stay, courts consider: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Vaughan v. Biomat USA, Inc.*, 2020 WL 6262359, at *1 (N.D. Ill. 2020). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

Applying these principles, Defendants have met their burden of demonstrating that a stay is warranted pending the Illinois Supreme Court's decisions in *Cothron* and *Tims*. Last September, the Illinois First District Appellate Court issued its decision in *Tims* and held that violations of Sections 15(c) and (d) of BIPA are subject to a one-year statute of limitations and violations of Sections 15(a), (b), and (e) are subject to a five-year statute of limitations. *See* 2021 IL App (1st) 200563. But the Illinois Supreme Court has allowed an appeal of that ruling, permitting the conclusion that the Illinois Supreme Court's decision to take up the case provides a "compelling reason" to doubt that the Illinois Appellate Court "stated the law correctly." *AAR Aircraft & Engine Grp., Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001).

The Illinois Appellate decision of course finds wide-ranging support in numerous other judicial decisions. But, as we have previously posited, "if the Illinois Appellate

14

Court's conclusion were truly so firm, what need would there be for the Illinois Supreme Court to take up the case? And why would at least several Illinois Supreme Court justices feel a need to clarify something that was already pellucidly clear? Ultimately, the Illinois Supreme Court must be hinting at something." *Jones v. IAS Logistics DFW, LLC*, No. 19 C 2510, Dkt. 74 (N.D. Ill. 2021).

Similarly, the Seventh Circuit in *Cothron* recognized that the question of when a BIPA claim accrues is one about which there is "genuine[] uncertain[ty]" and "implicates fundamental Illinois accrual principles on which only the state's highest court can provide guidance." 20 F.4th 1156, 1166 (7th Cir. 2021). We find it significant that the Seventh Circuit stayed further proceedings in *Cothron* pending the Illinois Supreme Court's guidance on the matter and follow its lead in this case.

Admittedly, this decision is a close call and the Court recognizes other courts in this District have declined to stay similar cases pending the outcomes in *Tims* and *Cothron*. And of course, the Court cannot predict how the Illinois Supreme Court will rule. But it cannot be denied that the Illinois Supreme Court's decisions in these cases will have a considerable impact on a very rapidly evolving area of law, as well as on how this case proceeds. Staying this matter will meaningfully streamline the issues and reduce the burden on the parties and the Court, and will not unduly prejudice or tactically disadvantage Gibbs. The Court therefore exercises its judicial experience and common sense to stay this case pending the Illinois Supreme Court's resolution of *Tims* and *Cothron*.

**VII. Count IX and Count X: IWPCA and FLSA Claim**

Finally, Defendants argue Gibbs' IWPCA and FLSA claims fail. Under the FLSA, an employer has the obligation "to exercise its control and see that work is not performed if it does not want it to be performed." *Keller v. Summit Seating, Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (citing 29 C.F.R. § 785.13). An employer "must, as a result, pay for all work they know about, even if they did not ask for the work, even if they did not want the work done, and even if they had a rule against doing the work." *Allen v. City of Chi.*, 865 F.3d 936, 938 (7th Cir. 2017). "An employer has constructive knowledge of an employee's work if it should have acquired knowledge of that work through reasonable diligence." *Pietrzycki v. Heights Tower Serv.*, 290 F.3d 822, 849 (N.D. Ill. 2017).

Further, the IWPCA requires "that the employer honor his contract"; it does not, however, confer rights to compensation that are absent from the employee's contract or employment agreement. *See In re Comdisco, Inc.*, 2003 WL 685645, at *3 (N.D. Ill. 2003) (quoting *Nat'l Metalcrafters v. McNeil*, 784 F.2d 817, 824 (7th Cir. 1986)). A violation of the FLSA or the Illinois Minimum Wage Law alone, without a corresponding violation of an employment contract or agreement, therefore, cannot establish a violation of the IWPCA. *See Palmer v. Great Dane Trailers*, 2005 WL 1528255, at *4 (N.D. Ill. 2005) (dismissing the plaintiff's IWPCA claim because she failed to allege that an agreement required her employer to pay overtime and, thus, "the correct route for [the plaintiff] to obtain earned pay, including potential overtime pay,

[was] through timely FLSA and IMWL claims," not the IWPCA). Instead, to survive dismissal, the plaintiff must point to an agreement supporting the IWPCA claim that is more than an allegation that the employer is bound by existing overtime laws. *See Palmer*, 2005 WL 1528255, at *4.

Here, Gibbs' IWPCA and FLSA claim are premised on the allegation that Abt and Ricky had notice that Gibbs was allegedly working through his unpaid meal breaks, and yet, knowingly deducted compensation for said breaks. But Gibbs' allegations do not support an inference of any constructive knowledge of employees working through meal breaks. Gibbs relies heavily on the fact that Abt knew drivers for urinating in bottles and punished them for it. But it does not follow from that fact that Abt knew employees were also working through meal breaks. This, coupled with the general allegations of "tight scheduling," without more does not "nudge" Gibbs' claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. Moreover, Gibbs' IWPCA claim does little more than allege the failure to pay overtime. Accordingly, Gibbs' FLSA and IWPCA claims are dismissed without prejudice.

## **CONCLUSION**

For the foregoing reasons, this Court grants-in-part Defendants' Motion to Dismiss Portions of Gibbs Complaint (Dkt. # 11). If he chooses, Gibbs may file an amended complaint consistent with this Opinion within 21 days. Telephonic status is set for 6/28/2022 at 10:20 a.m. It is so ordered.

Dated: 05/24/2022

_____
Charles P. Kocoras
United States District Judge