UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUSTIN GIBBS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 21 CV 6277 |
| ) | |
| ABT ELECTRONICS, INC. and RICKY ) | |
| ABT, individually, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants ABT Electronics, Inc. ("ABT") and Ricky Abt's (collectively, "Defendants") Motion to Dismiss Count VIII of Plaintiff Justin Gibbs' First Amended Complaint. Dkt. # 21. For the following reasons, the Court grants-in-part and denies-in-part Defendants' Motion. The Motion is granted as to Ricky Abt only and denied as to ABT. Count VIII against Ricky Abt is dismissed without prejudice.

## BACKGROUND

Gibbs filed his Amended Complaint on June 14, 2022 (Dkt. # 19), seeking relief for discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. (Counts I and II); discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C.S. § 12101 (Counts III and IV);

discrimination and retaliation under 42 U.S.C. § 1981 (Count V); violation of the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.* (Count VI); violation of the Illinois Biometric Privacy Act, 740 ILCS 14/1 *et seq.* (Count VII); and violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.* (Count VIII).

Defendants seek to dismiss Gibbs' IWPCA claim. The following facts, taken from the Amended Complaint, are relevant to that claim and are assumed true for the purpose of this Motion. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Gibbs' favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

ABT is an Illinois corporation headquartered in Glenview, Illinois. Dkt. # 19, ¶ 2. ABT is a retailer that sells consumer electronics, appliances, and furniture, both online and via its brick-and-mortar store in Glenview. *Id*. It is a family-owned business presently owned and operated by members of the Abt family, including Ricky Abt. *Id*., ¶ 3. Ricky Abt is a co-owner and the co-president of ABT. *Id*., ¶¶ 5, 36. He was a corporate officer with significant control over portions of the ABT enterprise. *Id*., ¶ 165. Ricky Abt had day-to-day authority over Gibbs' terms and conditions of employment, including the authority to hire and fire, make pay decisions, and otherwise control Gibbs' work conditions. *Id*., ¶ 164.

Gibbs is an Illinois citizen. *Id*., ¶ 1. On or about February 20, 2017, ABT hired Gibbs as a "Helper." *Id*., ¶ 14. When Gibbs was hired by ABT, he and ABT entered

2

into a verbal agreement (the "Employment Agreement") whereby ABT hired Gibbs to perform work for ABT in exchange for hourly wages at an agreed rate of $16 per hour for the first 40 hours of work performed in a week and at time-and-a-half for overtime thereafter. *Id.*, ¶ 16. Gibbs worked for ABT as a "Helper" from approximately February 20, 2017, until approximately April 19, 2020. *Id.*, ¶ 15. The Employment Agreement remained in place throughout Gibbs' employment at ABT, subject to periodic raises to Gibbs' hourly wages/agreed rate. *Id.*, ¶ 17. Throughout his employment, Gibbs performed his obligations under the Employment Agreement. *Id.*, ¶ 18.

As an employee, Gibbs claims he was subject to unfair treatment, including unfair scheduling and delivery assignments and more severe punishments. *Id.*, ¶ 41. ABT allegedly singled Gibbs out and docked his pay, issued fines against his compensation, made false accusations about him, and issued pretextual discipline to him. *Id.*, ¶ 53. Utilizing a discriminatory bonus and fine scheme as a means of pressuring employees, ABT and Ricky Abt regularly required Gibbs to work under conditions of extremely tight scheduling to service numerous ABT customers in a single workday. *Id.*, ¶ 54. Failure to meet the schedule resulted in negative consequences. *Id*. As a result, ABT's employees, including Gibbs, were often required to miss meal breaks, which were automatically deducted from their pay whether they took the break or not. *Id.*, ¶ 55. Gibbs regularly worked through all or part of his meal breaks, and ABT and Ricky Abt regularly subjected him to automatic payroll deductions for time

attributed to meal breaks that Gibbs did not take. *Id.*, ¶ 61. Gibbs did not provide ABT with written consent to make such automatic deductions. *Id.*, ¶ 162. ABT failed to pay Gibbs wages for all hours that he worked through meal breaks. *Id.*, ¶ 166. Some of the automatic deductions occurred in work weeks during which Gibbs worked more than 40 hours per week and thus resulted in Gibbs not receiving overtime compensation to which he was entitled. *Id.*, ¶ 167.

ABT employees also engaged in a practice of urinating into empty bottles instead of taking proper bathroom breaks during the workday. *Id.*, ¶ 56. In multiple instances, ABT issued discipline to certain employees for being caught with one or more urine bottles within their ABT-provided service vehicles. *Id*. ABT incorrectly disciplined Gibbs in connection with a urine bottle it found and disciplined him more severely than other employees. *Id.*, ¶ 62.

Gibbs was terminated from his employment at ABT in April 2020. *Id.*, ¶ 88. ABT failed to timely pay Gibbs his final paycheck after his termination. *Id.*, ¶ 89.

Gibbs filed his eight-count Amended Complaint on June 14, 2022. Defendants move to dismiss Gibbs' IWPCA claim (Count VIII) with prejudice for failure to state a claim.

Defendants first argue that the IWPCA claim is deficient because Gibbs cannot allege that Defendants failed to compensate him in accordance with an agreement, noting the IWPCA does not create entitlement to overtime and merely requires that the employer honor his contract. Dkt. # 22, at 2. Defendants assert that Gibbs "still fails

4

to allege that he and [ABT] had any agreement that [Gibbs] could choose to work through his unpaid meal break while making deliveries across the Chicagoland area or that, if he did, he would be compensated for that time," and that allegations that an employer is bound by existing overtime laws are insufficient to support an IWPCA claim. *Id*. at 2–3. Defendants further note that Gibbs "does not claim that he even notified anyone at [ABT] that he allegedly failed to take his meal break, that [ABT] permitted employees to work through their unpaid meal breaks, or that he ever requested to be paid for the time allegedly worked." *Id*. at 3.

As to Ricky Abt, Defendants argue Gibbs' allegations are insufficient to show Ricky Abt is an employer for the purpose of the IWPCA such that the Court could find individual liability. Defendants acknowledge that an employer under the IWPCA includes "agents of an employer who knowingly permit such employer to violate the [IWPCA]" but assert Gibbs makes no specific allegations that Ricky Abt "knowingly permitted" ABT to violate the IWPCA, only conclusory allegations of knowledge, which are insufficient. *Id*. at 4. Even if Ricky Abt did have notice of Gibbs working through a meal break, Defendants say, Gibbs does not allege that Ricky Abt knew that Gibbs was not compensated for allegedly working through his meal breaks nor that Gibbs ever sought compensation from Ricky Abt for any unpaid meal breaks. *Id*. at 4–5.

5

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.,* 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well-pled facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

**DISCUSSION**

Defendants move to dismiss Gibbs' IWPCA claim on two grounds: (1) Ricky Abt does not qualify as an employer under the IWPCA, and (2) Gibbs does not and cannot allege that ABT failed to compensate him in accordance with an agreement. The Court agrees with Defendants that Gibbs has failed to allege Ricky Abt is an employer as defined by the IWPCA. However, we find that Gibbs has sufficiently pled his IWPCA claim against ABT.

The IWPCA requires employers to "pay every employee all wages earned during the semi-monthly pay period," 820 ILCS 115/3, and to "pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee," 820 ILCS 115/5. In other words, the IWPCA "provides employees with a cause of action against employers for the timely and complete payment of earned wages." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (citing 820 ILCS 15/3). Under the IWPCA, wages are defined as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the two parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2.

**I.     Ricky Abt as an Employer Under the IWPCA**

The parties do not dispute that Gibbs is an employee or that ABT is an employer, but Defendants argue Gibbs fails to show that Ricky Abt is an employer under the IWPCA. The IWPCA defines the term "employer" as:

7

> any individual, partnership, association, corporation, limited liability company, business trust, employment and labor placement agencies where wage payments are made directly or indirectly by the agency or business for work undertaken by employees under hire to a third party pursuant to a contract between the business or agency with the third party, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed.

820 ILCS 115/2. It also provides that "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13. Section 13 "reserves personal Wage Act liability for those individual decisionmakers who knowingly permitted the Wage Act violation" by the employer. *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 109 (2005). Courts in this district have "interpreted 'knowingly permit' to mean advise, consent, affect, or consult." *Cullotta v. United Surgical Partners Int'l, Inc.*, 2021 WL 3367193, at *9 (N.D. Ill. 2021) (cleaned up) (collecting cases).

The only allegation that Gibbs points to as showing Ricky Abt is an employer is "[a]t all relevant times hereto, Ricky Abt possessed day-to-day authority over Plaintiff's and other employees' terms and conditions of employment, including without limitation the authority to hire and fire, make pay decisions, and otherwise control Gibbs' work condition." Dkt. # 24, at 4 (citing Dkt. # 19, ¶ 164). Gibbs cites *Zwick v. Inteliquent, Inc.* for the proposition that the "IWPCA does not require an individual defendant to have directly made the decision alleged to have violated the IWPCA. Rather, an

8

individual defendant is a 'decision maker' for the purposes of the statute, if the individual was in a position to 'knowingly permit' the employer to violate the statute." 83 F. Supp. 3d 804, 812 (N.D. Ill. 2015).

Gibbs misconstrues what the court was saying in *Zwick*, seeming to suggest that any supervisor or "decision maker" who was "in a position to 'knowingly permit'" the IWPCA violation would necessarily be an employer under the IWPCA, whether they actually "knowingly permitted" the IWPCA violation or not. But that is the exact approach rejected by the Illinois Supreme Court in *Andrews*. 217 Ill. 2d at 108–09. In *Zwick*, two individuals moved to dismiss the IWPCA claim against them, arguing they "merely 'participated in' and 'executed' a decision that was actually made by [the defendant company], and they did not have the power 'to cause [the defendant company] to pay or not pay the wages at issue,'" and so they were not "decision makers" for purposes of the IWPCA. 83 F. Supp. 3d at 810. The court rejected this, finding the defendants still "knowingly permitted" the IWPCA violation and thus were "decision makers" because of allegations that they had a "significant and central role in the decision to terminate [the plaintiff]," "made the decision to not pay [the plaintiff] in accordance with the IWPCA," and "handled the discussions with [the plaintiff] regarding the nominal severance that was offered to him" and regarding the defendant company "not paying [the plaintiff] the final compensation due and owing him." *Id*. (cleaned up). Rather than abrogate Section 13's knowing permission requirement for finding individual liability, *Zwick* merely confirmed that knowing permission is

9

required, but was broader than the defendants there suggested. Being a "decision maker," without knowing permission of the alleged IWPCA violation, is not sufficient to state an IWPCA claim against Ricky Abt in his personal capacity.

Unlike in *Zwick*, Gibbs does not adequately allege that Ricky Abt was involved in an alleged decision to not compensate him for meal breaks. In the Court's order dismissing the IWPCA claim from Gibbs' original Complaint, we noted:

> Gibbs' allegations do not support an inference of any constructive knowledge of employees working through meal breaks. Gibbs relies heavily on the fact that [Ricky] Abt knew drivers [were] urinating in bottles and punished them for it. But it does not follow from that fact that [Ricky] Abt knew employees were also working through meal breaks. This, coupled with the general allegations of "tight scheduling," without more does not "nudge" Gibbs' claims "across the line from conceivable to plausible."

Dkt. # 18, at 17 (citing *Iqbal*, 556 U.S. at 680). Gibbs did not add any allegations to his Amended Complaint that alter the Court's assessment. Conclusory allegations of Ricky Abt's knowledge cannot suffice. *See Iqbal*, 556 U.S. at 680–81 (rejecting allegations that petitioners "knew of, condoned, and willfully and maliciously agreed to subject" respondent to harsh conditions as "conclusory and not entitled to be assumed true."). Without knowledge of Gibbs allegedly working through meal breaks, Ricky Abt cannot have knowingly permitted the IWPCA violation. *See Andrews*, 217 Ill. 2d at 109.

Even drawing all reasonable inferences in Gibbs' favor, as we are required to do at this stage, Gibbs has not sufficiently stated an IWPCA claim against Ricky Abt in his

individual capacity. We therefore dismiss the IWPCA claim against Ricky Abt without prejudice.

## II.  Sufficiency of the IWPCA Claim Against ABT

To state a claim under the IWPCA, Gibbs must demonstrate that he is owed compensation from Defendants pursuant to an employment agreement. *Enger*, 812 F.3d at 568. An "agreement" under the IWPCA is "broader than a contract" and "requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an 'agreement' without the formalities and accompanying legal protections of a contract." *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012) (quoting *Zabinsky v. Gelber Grp., Inc.*, 347 Ill. App. 3d 243, 249 (2004)).

"The IWPCA requires 'that the employer honor his contract;' it does not, however, confer rights to compensation that are absent from the employee's contract or employment agreement." *Barlett v. City of Chi.*, 2015 WL 135286, at *2 (N.D. Ill. 2015) (quoting *In re Comdisco, Inc.,* 2003 WL 685645, at *1 (N.D. Ill. 2003)). A violation of the Fair Labor Standards Act ("FLSA") or Illinois Minimum Wage Law ("IMWL") alone, without a corresponding violation of an employment contract or agreement, cannot establish a violation of the IWPCA. *Id*. Therefore, to survive a motion to dismiss, Gibbs must point to an actual agreement rather than merely allege that Defendants are bound by existing overtime laws. *See id*.

Defendants argue Gibbs does not allege ABT failed to compensate him in accordance with an agreement. But Defendants largely ignore and/or misunderstand

11

the consequence of Gibbs' allegation, newly included in his Amended Complaint, that he and ABT verbally made the Employment Agreement. *See Zabinsky*, 347 Ill. App. 3d at 249–50 (oral agreement supported the plaintiff's IWPCA claim); *Shages v. MDScripts Inc.*, 2019 WL 2327651, at *4 (N.D. Ill. 2019) (same). Gibbs alleges that, according to the Employment Agreement, ABT would pay him $16 per hour for the first 40 hours of work performed in a week and time-and-a-half for overtime thereafter.

Defendants rely heavily on the proposition that a plaintiff cannot merely plead that an employer failed to pay overtime compensation under current overtime laws. But Gibbs does more than that. He alleges the existence of the Employment Agreement, which specifically provided for overtime pay. He also alleges that ABT failed to pay him regular, non-overtime wages for the hours he worked through his lunch breaks, in addition to alleging that he was owed overtime payment for some of those breaks when his weekly hours totaled more than 40.

The *Palmer* case relied on by Defendants is inapposite. There, the plaintiff sought only overtime pay, did not "allege[]the existence of any agreement, contract, or CBA stating that [the defendant] promised to pay [the plaintiff] overtime," and relied only on the FLSA and IMWL. *Palmer v. Great Dane Trailers*, 2005 WL 1528255, at *3–4 (N.D. Ill. 2005). Here, Gibbs alleges that ABT failed to pay him regular as well as overtime wages, and that ABT verbally agreed to pay him overtime.

*House v. Illinois Bell Telephone Company* is also inapplicable because there, the policy that the plaintiff was relying on to allege failure to pay overtime "expressly

12

acknowledge[d] that it [was] intended to implement the requirements of the FLSA and all applicable state and local laws," which the court found did "no more than memorialize [the defendant's] commitment to abide by state and federal laws . . . ." 148 F. Supp. 3d 701, 708 (N.D. Ill. 2015).

Furthermore, Defendants' reliance on *Brown v. Lululemon Athletica, Inc.* is misplaced because there, the plaintiff had not alleged that the defendant agreed to pay her for "ancillary activities" such as "attending a staff meeting, taking one exercise class per week, and listening to a motivational CD." 2011 WL 741254, at *3 (N.D. Ill. 2011). Here, Gibbs alleges that Defendants failed to compensate him for his regular work tasks.

We also reject Defendants' argument that Gibbs does not allege that he "notified anyone at [ABT] that he allegedly failed to take his meal break, that [ABT] permitted employees to work through their unpaid meal breaks, or that he ever requested to be paid for the time allegedly worked." Dkt. # 22, at 3. Defendants cite no case law for this proposition. While Section 13 of the IWPCA requires a "knowing" violation of the IWPCA for an individual officer or agent to be *deemed* an employer, no such requirement exists for the employers themselves. *See Pechulis v. Pipeline Health Sys. LLC*, 2020 WL 4003519, at *6 (N.D. Ill. 2020). An employer's duties under the IWPCA are "strict, with no consideration given to the purported employer's ability to effectuate compliance." *Andrews*, 217 Ill. 2d at 107; *see also Andrews v. Kowa Printing Corp.*, 351 Ill. App. 3d 668, 676 (2004) ("Section 5 of the Wage Act does not require that plaintiffs prove that the employer willfully failed to pay the final compensation. It

13

is enough . . . that plaintiffs were simply not paid by the next regularly scheduled payday after separation.").

Accordingly, Gibbs has sufficiently stated his IWPCA claim against ABT and Defendants' motion is denied on this basis.

## CONCLUSION

For the foregoing reasons, the Court grants-in-part and denies-in-part Defendants' Motion to Dismiss Gibbs' IWPCA claim (Dkt. # 21). The motion is granted as to Ricky Abt, but denied as to ABT. Count VIII against Ricky Abt is dismissed without prejudice. It is so ordered.

Dated: 10/28/2022

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge