UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUSTIN GIBBS,

                Plaintiff,

      v.

ABT ELECTRONICS, INC. and
RICKY ABT, individually,

              Defendants.

Case No. 21 C 6277

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Justin Gibbs brings this action against his former employer, Abt Electronics, Inc. ("ABT"), and one of its owners, Ricky Abt, alleging harassment, discrimination, and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) *et seq.* (Counts I and II) and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102 *et seq*. (Counts III and IV), discrimination and retaliation under 42 U.S.C. § 1981 (Count V), harassment, discrimination, retaliation, and failure to accommodate in violation of the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq*. (Count VI), violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. (Count VII), and violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq*. (Count VIII). The parties are engaged in written discovery. Unfortunately, and despite their obligations to meet and confer in good faith, numerous disputes that could and should have been resolved between the parties remain unresolved. As a result, ABT has moved to compel full and complete discovery relating to Gibbs' claims for monetary damages and his efforts to mitigate his damages. Gibbs has also filed a motion to compel, in which he asks the Court to compel ABT to produce various categories of information and documents. For the

reasons and to the extent set forth below, ABT's Motion to Compel [62] is granted and Gibbs'

Motion to Compel [63] is granted in part, denied in part, and denied without prejudice in part.

## BACKGROUND

ABT, an Illinois corporation headquartered in Glenview, Illinois, sells electronics, appliances, and home goods. Gibbs, who is Black and African American, worked at ABT as a Helper on a delivery truck and performed in-home installations from February 20, 2017 until April 19, 2020, when he was terminated. Gibbs alleges that he suffers from multiple disabilities under the ADA, including an autoimmune disease, vitiligo, and anxiety. Throughout his employment, Gibbs asserts that he was victimized and subjected to abuse because of his race, color, national origin, and disabilities. Specifically, Gibbs alleges that "Caucasian and Hispanic supervisors and coworkers harassed him, used racial slurs, called him a 'nigger' multiple times, embarrassed and attempted to intimidate him and docked his pay and/or issued unfair and fabricated fines against his compensation, subjected him to inhumane working conditions, and mocked his health conditions, using them as a way to punish Gibbs for speaking out against its oppressive and unlawful practices, among other things." First Am. Compl., Doc. 19 at 1. Gibbs further alleges that Defendants retaliated against him for complaining about discrimination and harassment. In addition, Gibbs alleges that ABT regularly required him to work through all or part of his meal breaks, but it subjected him to automatic payroll deductions for meal breaks during which he actually worked. Finally, Gibbs alleges that ABT required him to have his fingerprints scanned by a biometric timekeeping device each time he had to clock in or out. He alleges various violations of the BIPA. Defendants deny Gibbs' allegations and further deny that they have any liability regarding Gibbs' claims asserted in his First Amended Complaint.

## **DISCUSSION**

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts assess proportionality by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Both motions to compel relate to alleged deficiencies regarding answers to interrogatories and document productions. With respect to interrogatories, Federal Rule of Civil Procedure 33(b)(3) states that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Therefore, "[a]nswers to interrogatories must be complete, explicit, and responsive." *Kitchen Delights, Inc. v. City of Harvey*, 2023 WL 5431350, at *2 (N.D. Ill. Aug. 23, 2023) (internal quotations omitted). "A responding party must include in its answer all information within its knowledge or control." *Gevas v. Dunlop*, 2020 WL 814875, at *1 (N.D. Ill. Feb. 19, 2020). Likewise, under Federal Rule of Civil Procedure 34(a)(1), a party is required to produce documents that are within its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "On the issue of control, the test is whether the party has a legal right to obtain [the evidence]." *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrig. & Air-Cond. Eng'rs., Inc.*, 755 F.3d 832, 839 (7th Cir. 2014) (internal quotations omitted). Finally, magistrate judges "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013).

## I.      ABT's Motion to Compel

ABT moves to compel full and complete answers to its Interrogatory Nos. 14 and 15 and Document Request Nos. 21, 24, 25, and 35.  These discovery requests relate to Gibbs' claims for damages, including lost wages, benefits, and other out of pocket damages, and his duty to mitigate his damages.  Gibbs is seeking approximately $170,000 in lost wages since April 2020 "minus any amounts by which [he] mitigated his damages." Pl's Fourth Supp. Rule 26(a)(1) Disclosures, Doc. 62-9 at 7.  Additionally, ABT has an affirmative defense asserting that Gibbs' damages should be barred or reduced if he failed to mitigate his damages. Doc. 23 at 42.  Generally, "a discharged employee must mitigate damages by using reasonable diligence in finding other suitable employment." *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1202 (7th Cir. 1989) (internal quotation marks and emphasis omitted).  "Although the duty to mitigate falls on the plaintiff, it is the employer's burden to establish that the plaintiff failed to mitigate [his] damages." *Arroyo v. Volvo Group North America, LLC*, 2017 WL 2985649, at *6 (N.D. Ill. July 13, 2017) (internal citations omitted).

### A.      Gibbs' Income Since His April 2020 Termination

ABT seeks production of information and/or documentation relating to Gibbs' income since his employment with ABT ended in April 2020 (Interrogatory No. 15 and Production Request Nos. 21 and 35).[1]  ABT moves to compel: (1) any IRS Form W-2s and/or IRS Form 1099s

---

[1] ABT's Interrogatory No. 15 asks Gibbs to:

> Identify all sources of income, including but not limited to wages, salary, health insurance benefits, disability benefits, business income and/or profits, social security payments, unemployment compensation benefits, pension benefits, gifts, loans, donations or any other monies whatsoever, that you received from April 18, 2020, to the present, specifying the type and amounts received and the dates received, and identify any documents related to the foregoing answers.

4

from 2020 to present; (2) tax returns for Gibbs or his business that he started in 2021, for which he claims to have earned "approximately $5,550", for the period of 2020 to present; (3) any documentation of Gibbs' business, North Shore Amenities, LLC ("North Shore Amenities"), for which he received what he claims was $18,000 in a PPP loan or any documentation of the PPP loan, including the application or the basis for which he received the loan, any revenues from his company or monies generated, collected, or earned by him as the owner of this company; (4) complete records of monies received, including revenues generated and income received since his employment with ABT ended in April 2020, specifically showing dates of receipt of the income, who received the monies, the amount, and who paid the amounts; (5) complete wage statements for all of his various employers during the relevant time; and (6) names and addresses of all employers and dates of employment, including any independent contractor work. Doc. 62 at 6-7.

Except for further information and documents regarding his PPP loan application, Gibbs' response brief does not dispute that the information and documents sought are potentially relevant to his claim that he lost income and benefits because of his termination. Doc. 64 at 3-4. Nor does his opposition raise any other specific objections to the discovery at issue. Rather, in his response brief, Gibbs explains that he is homeless and unemployed with a lack of access to or sophistication with technology. Nevertheless, he says that he has conducted a reasonable search for documents responsive to ABT's requests, produced over 400 pages of documents, and is not withholding any non-privileged documents. Gibbs claims that he has produced all documents "he possesses or has access to regarding his earnings" since his employment with ABT ended in April 2020. For the

---

ABT's Request for Production No. 21 requests: "All documents that relate to any source of income you received since April 18, 2020, including, but not limited to wages, salary, health insurance benefits, business income and/or profits, social security payments, unemployment compensation benefits, pension benefits, gifts, loans, donations or any other monies received." Its Request for Production No. 35 seeks "[a]ll documents the identification of which is requested in Defendant's First Set of Interrogatories to Plaintiff."

reasons discussed below, the Court finds that Gibbs has access to many of the requested documents which have not been produced. Doc. 64 at 3. The Court addresses each category of documents in turn and concludes that Gibbs must take additional steps to search for and produce responsive information and documents within his custody and control.

### 1. North Shore Amenities and PPP Loan

Regarding his business and PPP loan, Gibbs' second supplemental answer to Interrogatory No. 14 states that "[i]n approximately July 2021, he obtained a PPP loan, which he estimates was in the amount of $18,000.00, and opened his own company, North Shore Amenities, LLC." Doc. 64-1 at 4. Gibbs states that he provided a screenshot of the Statement of Organizer of LLC for North Shore Amenities and records relating to payments it received through Zelle. In opposing the motion to compel, Gibbs generally objects to the remainder of ABT's request, including requests for any documentation of North Shore Amenities, the PPP loan application, and the basis of the loan, as irrelevant, overly broad and not proportional to the needs of the case. Doc. 64 at 3-4. But no reasons were given for these conclusory objections. Gibbs does not specify why the requests are irrelevant, overbroad, or not proportional to the needs of the case. Unexplained, boilerplate objections to discovery are "tantamount to not making any objection at all." *Gevas*, 2020 WL 814875, at *3 (internal quotations omitted); *LKQ Corp. v. Kia Motors America, Inc.*, 2023 WL 2429010, at *3 (N.D. Ill. March 9, 2023). Consequently, without any explanation, Gibbs has not satisfied his burden to show why the request for documentation regarding North Shore Amenities, the PPP loan application, and the basis of the loan is not relevant and proportional to the needs of the case.

Even if supported, however, the Court would overrule these objections because the information sought appears to be relevant and proportional to the needs of the case at this time.

First, Gibbs has answered that he opened his own company North Shore Amenities and obtained a PPP loan in the approximate amount of $18,000. ABT is thus entitled to some documentation to confirm that this business existed and was operating to assess his claim for damages and his efforts to mitigate his damages. In that regard, ABT searched the Secretary of State's ("SOS") website for searching businesses and there is no indication that Gibbs established any business in Illinois.[2] Using the business's principal address and the registered agent's address as reflected in the SOS website, ABT sent two document subpoenas to North Shore Amenities and both were returned as undeliverable. ABT points out that the Statement of the Organizer document produced by Gibbs shows that a website Incfile.com was used to set up his business North Shore Amenities. Thus, it appears Gibbs would have access to that account and could produce responsive documents.

Moreover, Gibbs' supplemental response to Interrogatory No. 15 states that he earned approximately $5,500 for his work with North Shore Amenities. ABT is entitled to documentation regarding any revenues from North Shore Amenities or monies generated, collected, or earned by him as the owner of this company. Gibbs' response brief states that he produced records relating to payments received from North Shore Amenities though Zelle, a mobile banking app. However, ABT states that the screen shots Gibbs produced from a Wells Fargo Zelle account showing certain deposits do not contain the name "North Shore Amenities" and the payments deposited do not match up to any of the various monetary amounts in Gibbs' interrogatory responses. *See* Doc. 68 at 3. ABT also states that Gibbs has not produced anything connecting this Zelle account at Wells Fargo to North Shore Amenities. Because Gibbs has provided selected screen shots from this Zelle

---

[2] According to ABT, the SOS website shows that North Shore Amenities was involuntarily dissolved as of January 2023, and it was created on July 16, 2021, by another individual. The Articles of Incorporation show Gibbs listed as a "manager" of the business with an address in Evanston, Illinois, which is for his uncle's business. Doc. 68-2.

account at Wells Fargo, he should have access to this account and can provide responsive documents from that account.

In addition, Gibbs did not produce any documentation regarding the PPP loan he received, including the name of the loaning bank. "The PPP is a Small Business Administration backed loan that was intended to help businesses keep their workforce employed during the COVID-19 crisis." *Barback v. Fisher*, 2022 WL 965914, at *8 n. 46 (M.D. La. March 30, 2022). "Parties seeking PPP loans were required to provide certain financial information." *Id*. The financial information Gibbs provided to the government in connection with a PPP loan may be relevant to Gibbs' claim for damages. *Id*. at *8. Specifically, Gibbs' PPP loan application and documents are relevant to the extent they contain information regarding his income, expenses, profits, and/or losses and alleged damages in this case. Accordingly, ABT is entitled to the name of the loaning bank, so it can subpoena the responsive information.

### 2. Gibbs' Earnings Relating to Post-ABT Employers

In his Second Supplemental Answer to Interrogatory No. 14, Gibbs identified several employers since his employment with ABT ended. Doc. 64-1 at 4-5. For all of his various employers during the relevant time, Gibbs provided only two pay stubs for a job he held for about a year and another two pay stubs for a job he claims he held for about 5-7 weeks. Doc. 62 at 6. Gibbs has provided no pay stubs for four of his claimed subsequent employers, including his own business (North Shore Amenities), and no specific dates for any of the jobs he worked. *Id*. In response to ABT's subpoenas, three of Gibbs' former employers (Midwest Distribution, Advance Refrigeration, and Rentokil/Ambius) provided relevant documents.

For the remaining employers, besides North Shore Amenities, Gibbs claims to have worked for Two Junior Logistics and Amazon Flex, a contractor for Amazon. In his Second Supplemental

Answer to Interrogatory No. 14, Gibbs states that he "estimates that at present Amazon Flex has paid him approximately $2,000.00 - $3,000.00 total and Two Junior has paid him approximately $12,000 total since 2021." Doc. 64-1 at 4. According to ABT, those amounts do not correlate with the handful of screen shots for a Zelle account that Gibbs cites in support of that statement. In addition, Gibbs has not produced any contact information for these two entities or any documentation of the income from these entities showing payments to Gibbs. ABT researched both companies and only located contact information for a company called Two Juniors Logistics, but a subpoena to that entity resulted in no response.[3] ABT is entitled to enough information to allow it to subpoena these two entities.

Moreover, ABT does not need to rely on Gibbs' estimates in an interrogatory response or inconsistent screen shots from an unidentified Zelle account regarding income he has received since his employment with ABT ended. Such evidence may be obtained directly from Gibbs' bank. Gibbs has control over bank records showing deposits into his account(s). *Symons International Group, Inc. v. Continental Casualty Co.*, 2016 WL 3124626, at *2 (S.D. Ind. June 3, 2016); *Domanus Lewicki*, 2011 WL 13268087, at *2 (N.D. Ill. Dec. 20, 2011); *Engel v. Town of Roseland*, 2007 WL 2903196, at *2 (N.D. Ind. Oct. 1, 2007) (defendants' "tax returns and bank statements are under their control."). ABT is entitled to the bank records showing deposits made into Gibbs' bank account from these employers or other entities for which Gibbs performed services.

---

[3] ABT says that Gibbs' counsel later advised that the information ABT used for the Two Juniors' subpoena from the Secretary of State website was incorrect. ABT is entitled to the correct contact information from Gibbs.

### 3. Tax Returns for Gibbs and North Shore Amenities

Although Gibbs is seeking lost past backpay he has suffered because of Defendants' alleged discriminatory and retaliatory conduct, he has not produced a single tax return or IRS Form W-2 or 1099 Form. Doc. 62-9 at 7. "Tax returns are relevant, for discovery purposes, where a litigant has put 'the level and sources of his [or her] income at issue." *Johnson v. Soo Line Railroad Co.*, 2019 WL 4037963, at *2 (N.D. Ill. Aug. 27, 2019); *Eternity Mart, Inc.*, *v. Nature's Source, LLC*, 2021 WL 4894701, at *2 (N.D. Ill. Oct. 20, 2021). Gibbs does not claim that his or his business tax returns are irrelevant to this action or are otherwise outside the scope of discovery. He states only that the tax returns which ABT seeks are not within his possession. Doc. 64 at 3. However, if Gibbs filed tax returns from 2020 to the present and he does not have copies of those returns, he can obtain copies from whomever prepared them or from the state and federal tax authorities. *Covarrubias v. Wendy's Properties, LLC.*, 2021 WL 4963557, at *1-2 (N.D. Ill. Oct. 26, 2021).[4] Any tax returns Gibbs filed therefore are within his "possession, custody, or control" within the meaning of Rule 34(a)(1). *Id*. at *1. If Gibbs or his business did not file any tax returns for the years since 2020, he shall provide a declaration stating that no such tax returns exist.

### 4. Gibbs' Relatives and Former Girlfriend

ABT next points out that Gibbs has used the addresses of his uncle, another relative, and his former girlfriend for employment/business purposes. Gibbs' uncle testified at his September 8, 2023 deposition that he does not have any of Gibbs' documents. He also stated that for years,

---

[4] According to the *Covarrubias* court's review of available sources, a person "can obtain a tax transcript from the Internal Revenue Service ("IRS") that will contain his adjusted gross income for prior tax years for free or he can obtain copies of any previously filed tax returns for a fee by submitting a Form 4506 to the IRS. *See https://www.irs.gov/newsroom/heres-how-people-can-request-a-copy-of-their-previous-tax-return (last visited 10/25/21).* The State of Illinois has a similar process a taxpayer can follow to obtain his Illinois tax return. *See https://www2.illinois.gov/rev/forms/misc/Documents/ReturnCopy/IL-4506.pdf* (last visited 10/25/21)." *Covarrubias*, 2021 WL 4963557, at *2.

Gibbs has had his mail delivered to his uncle's house where Gibbs only lived for about a year from 2015-2016. Gibbs' uncle testified that he refuses Gibbs' mail and returns it to the U.S. Postal Service. Gibbs' uncle stated that up to about 3-4 months ago, he was continuing to receive and declining delivery of Gibbs' mail at his home and/or his business. Therefore, the U.S. Postal Service should have Gibbs' undelivered mail, which Gibbs has access to collect. Further, during Gibbs' uncle's deposition, ABT learned that Gibbs lived with another relative during the time since his termination. Gibbs' uncle also testified that the address listed on Gibbs' most recent production of a resume is his former girlfriend's address. Gibbs shall follow-up with the U.S. Postal Service, the unidentified relative he lived with during the relevant time, and his former girlfriend to obtain responsive information/documents.

Accordingly, ABT's motion is granted with respect to Interrogatory No. 15 and Request for Production Nos. 21 and 35. Consistent with his obligations under Rules 33 and 34, Gibbs shall conduct a good faith and reasonable investigation taking the steps outlined above and submit a supplemental answer to Interrogatory No. 15 and produce additional responsive documents or otherwise amend his response to detail the steps he has taken to obtain responsive documents within his custody or control, even if not in his actual possession, within 21 days of this opinion. Any produced tax return shall be designated confidential under the parties' Agreed Confidentiality Order. *See* Doc. 28 at 2.

### B. Gibbs' Job Search and Other Mitigation Efforts

ABT also requested information and/or documentation relating to Gibbs' job search and mitigation efforts in its Interrogatory No. 14 and Request for Production Nos. 24 and 25.[5]

---

[5] In Interrogatory No. 14, ABT asks Gibbs:

> For the time period of April 18, 2020, to the present, identify: (a) the name and address of each company, business enterprise, organization or public employer with whom you sought

11

Although Gibbs provided some information in response to these discovery requests, ABT argues that Gibbs' responses and document production are not complete. *See* Doc. 62 at 8-11. For example, in his Second Supplemental Answers to Interrogatory No. 14, Gibbs responded that he submitted and continues to submit numerous applications for jobs though online job sites such as Indeed.com and ZipRecruiter.com. Doc. 64-1 at 3. ABT states that for two 14-day periods, Gibbs provided documentation, which appears to be from his Indeed account, but there is no information on those pages that identify the name of the account holder. Doc. 62 at 12. Moreover, no other printouts from other job search site accounts have been produced. Gibbs also provided the names of certain employers he submitted job applications to, but he did not provide the addresses for the employers or any details about the applications for employment. Gibbs stated that he had approximately 10 phone interviews and four in-person interviews at unidentified companies but he provides no details about these interviews. Doc. 64-1 at 3. And again, Gibbs has not provided any records showing his claimed revenues of $5,500, expenses, or income from the operation of his company, North Shore Amenities. Nor has he produced any documentation related to the

---

employment and the date(s) you contacted such entity; (b) the name and address of each public or private employment service or agency you contacted to assist you in seeking or obtaining employment; (c) all sources you utilized in seeking to obtain subsequent employment, including, but not limited to, personal contacts, newspapers, trade publications, job websites, etc.; (d) whether or not you received a job offer and, if so, the date of such offer, the terms and conditions of such offer, including the position, title, salary level/hourly rate of pay and other benefits and whether or not you accepted said offer; and the reason you did not commence employment with each employer identified.

In its Request for Production No. 24, ABT asks for "[a]ll documents, including, but not limited to, correspondence, electronic information, e-mails, text messages, instant messages, phone logs, employment applications, or other materials generated, created and/or stored by you relating to any attempts you have made to secure any employment since April 18, 2020." Its Request for Production No. 25 seeks: "[w]ith respect to each and every prospective employer you contacted by telephone, mail, e-mail, on social media, or in any other manner since April 18, 2020, all documents used by you to determine which prospective employer(s) to contact, and all documents containing communications between you and such prospective employer(s)."

estimated $18,000 PPP loan he obtained to start the business, including the application for the loan or the name of the bank at which he applied for the loan, so that ABT can subpoena the responsive information.

ABT asserts that it is entitled to actual documentation, not Gibbs' recollection as to rates of pay, approximate amounts earned, general hours worked, and names of alleged employers with no details. In its motion, ABT seeks production of: (1) resumes and/or applications submitted in his job search efforts;[6] (2) full names and addresses (or contacts) for the various potential employers where he applied, so that ABT can follow up on the information with subpoenas; (3) all electronically stored information from the job search sites that Gibbs indicated he used for his employment search efforts, such as Indeed.com and ZipRecruiter.com, for the period of April 2020 to present, including job description, resume/application submitted, and responses; and (4) records from Gibbs' company (North Shore Amenities), including any documentation showings any efforts to generate business, the $5,500 in earnings, or even what services it provided.

In his response brief, Gibbs does not assert any specific objections.[7] He responds by stating he has undertaken his job search primarily or exclusively online through sites like LinkedIn. He points out that he produced nine pages of documents from his LinkedIn account, which includes letters/emails for four jobs. *See* Doc. 64-5.[8] Gibbs also claims that he has identified the location of his potential employers to the best of his ability and is not withholding addresses, but his answer

---

[6] ABT's reply brief indicates that Gibbs' most recent document production included, for the first time, a copy of a resume relating to his job search efforts.

[7] Gibbs' conclusory statement, with no explanation, that ABT's request for any additional information beyond what he and the subpoena respondents provide is not proportional to the needs of the case amounts to no objection all. Doc. 64 at 5.

[8] ABT states that Gibbs' response brief is the first time he has identified LinkedIn as a site that he has been using for his job search.

to Interrogatory No. 14 does not include a single address for a potential employer. Doc. 64-1 at 3-5.

Given Gibbs' duty to mitigate damages through alternative employment and ABT's burden to prove Gibbs' failure to mitigate damages, ABT is entitled to full and complete discovery regarding Gibbs' post-termination job search efforts. Gibbs' interrogatory answer and document production provided some information related to his mitigation efforts, but his production is insufficient. ABT is entitled to verify Gibbs' interrogatory response statements regarding his efforts to mitigate damages. Gibbs thus has an obligation under Rule 33 and 34 to fully respond to the discovery requests by, for example, providing responsive electronically stored information from the job search sites that Gibbs indicated he used for his employment search efforts (*e.g.*, Indeed, ZipRecruiter, and LinkedIn), the addresses of the employers he submitted applications to and details about the applications for employment, and the names and addresses of employers he interviewed with and the details of the jobs. Gibbs is also required to search his email accounts for communications with potential employers. Accordingly, ABT's motion is granted with respect to Interrogatory No. 14 and Request for Production Nos. 24 and 25.

The Court recognizes that Gibbs is currently homeless but he is not proceeding *pro se*. Gibbs' counsel shall assist him with accessing and producing responsive documents within his possession, custody, or control consistent with this opinion within 21 days of this opinion. Most of the requested information is available on the internet through accessing Gibbs' accounts or requests that can be made via the internet.

## II.    Gibbs' Motion To Compel

In his motion, Gibbs asserts that ABT has failed to adequately respond to four interrogatories and twelve document production requests. He moves to compel various categories of information and documents. The Court will address each contested discovery request in turn.

14

### A.       Email Communications About or Concerning Gibbs

The parties first disagree about ESI discovery.  Gibbs' Request for Production Nos. 3 and 5 ask, among other things, for production of emails concerning Gibbs and his employment.  In response, ABT ran a search for the terms "justin" and "gibbs" across seven agreed custodians with no time frame limitation, which resulted in 5,763 documents totaling 67,499 pages.  ABT says that the search terms were too broad and resulted in a large number of hits on irrelevant information. ABT argues that requiring it to review every single email and attachment to see if it may be relevant is not proportionate to the needs of this case.  It estimates that a review of 67,500 pages would require 281.25-562.50 hours of attorney time, resulting in a cost of between $70,000 to $140,000. Doc. 65 at 8.  According to ABT, such an expense is not proportionate to the needs of this case, particularly given that more targeted search terms could be crafted by Gibbs if he thought something existed that has not been produced.  However, the record demonstrates that ABT's counsel previously represented in May 2023 that it was possible to exclude certain terms or e-mail addresses from the ESI to be searched to limit the amount of hits. Doc. 63-1, 23:2-24:21; Doc. 63-2, 52:23-53:17.  With respect to this specific search, defense counsel indicated he would contact Gibbs' counsel if there was anything else to discuss with respect these emails. *Id.*  In its response brief, ABT states that it advised Gibbs' counsel in August 2023 emails that "such wholesale exclusions of irrelevant emails from [the "justin" and "gibbs" search] was not possible and that each email would need to be reviewed." Doc. 65 at 8 n.2.

The August 2023 emails cited by ABT do not support that it advised Gibbs' counsel that it is not possible to use narrowing or exclusionary search criteria (such as "w/in" or "but not") to narrow the search and exclude irrelevant information. Doc. 65-2.  Rather, these emails, on the eve of the motion to compel filing deadline, indicate that ABT objected to producing the results of the

15

ESI search for "justin" and "gibbs" as too voluminous.  ABT explained the terms hit on any lists of drivers/helpers or other employee lists or various attachments, such as emails that have an employee list or schedule attached like daily schedules that are sent out.  In response, Gibbs' counsel asked to meet and confer regarding this issue, including discussing the use of narrowing or exclusionary connectors to reduce the number of irrelevant documents identified or excluding email attachments from the ESI search in order to narrow the results.  The Court is not going to detail the subsequent emails between counsel, but the bottom line is that no further meet and confer session was held on this issue before Gibbs' motion to compel was filed.  As a result, Gibbs' counsel says that she does not have enough information currently to propose a solution regarding the parameters of a further ESI search.

Unfortunately, it is apparent that the parties did not engage in a fulsome meet and confer session regarding this ESI issue.  The parties have more work to do on this issue and the ESI responsive to Gibbs' Requests for Production Nos. 36-39 related to his BIPA claim. *See* Doc. 65-2.  The Court is not going to resolve issues that could (and should) have been resolved by counsel in good faith discussions designed to reach a compromise.  Therefore, given the track record of this case with regard to discovery, the Court finds that an in-person meet and confer session, with a court reporter present and costs to be split, is required so that ESI discovery can be completed in a timely manner.  The Court expects counsel's good faith efforts to agree on appropriate search terms that will eliminate the need for a further Court involvement on these issues.  Accordingly, counsel are ordered to meet and confer in-person as many times as necessary regarding these ESI issues during the 21 days after this opinion issues and use their best efforts to resolve the issues. If any limited issues remain after the meet and confer process, a joint status report must be filed within 28 days of this opinion detailing the parties' respective positions on disputed proposals,

along with a copy of the transcript of the meet and confer session.[9]  Regarding these ESI issues, Gibbs' motion to compel is denied without prejudice.[10]

### B.    Gibbs' Assigned Route Schedules

In his Request for Production Nos. 3 and 25, Gibbs asked ABT to produce his assigned route schedules because they are relevant to his claim under the IWPCA that Defendants automatically deducted his pay for meal breaks that were not taken.  ABT produced route schedules with customers' addresses rounded to the nearest 100 (e.g., 2425 would be rounded to 2400, and 2475 would be rounded to 2500), citing privacy concerns.  Gibbs now moves for the exact addresses for customers' homes where he made deliveries without rounded addresses.  Gibbs argues that in a congested and densely populated area like Chicago, one city block could make a difference in the amount of travel time it takes to drive an ABT delivery truck to a customer's address.  Gibbs also seeks to avoid any future evidentiary issues which could arise, including as to the authenticity of the route schedules, because Defendants have produced a document for

---

[9] To clarify, on the Requests for Production related to Gibbs' BIPA claim, Gibbs is not asking for previously produced documents and ABT is not required to produce duplicative discovery.  Gibbs is seeking responsive ESI which was "not previously produced by Ceridian pursuant to plaintiff's Rule 45 subpoena." Doc. 65-2 at 5.  If ABT maintains that all responsive documents have already been produced in response to the subpoena to Ceridian, as ABT's counsel's email of August 21, 2023 suggests (Doc. 65-2 at 4), ABT is instructed to provide a declaration confirming that it has no responsive documents that were not previously produced by Ceridian.

[10] ABT also ran a search for Gibbs' work email address (justin.gibbs@Abt.com) and the search resulted in 702 documents.  Gibbs' motion seeks the production of relevant emails and their attachments resulting from this search to the extent those electronic documents have not been previously produced.  ABT's response brief explains that "the search results mirror what has already been produced that is relevant and that there was a lot of duplication of information, particularly bonus fund information, for which complete records had already been produced." Dc. 65 at 7.  Gibbs does not dispute ABT's production in his reply brief, or otherwise provide any specific response regarding the search for his work email address.  The Court therefore denies Gibbs' motion to compel the results from a search for his work email address as moot. Relatedly, Gibbs' motion also raised an issue about a missing group of documents ABT previously produced which contained emails (Bates Range 8592-9541).  Since Gibbs does not further mention this issue in his reply brief, it appears that issue was resolved.

purposes of discovery rather than producing the original document. In order to address Defendants' privacy concerns, Gibbs proposes that unredacted copies of his assigned route schedules in which the addresses have not been rounded by Defendants be designated as "Attorneys' Eyes Only" under an amended agreed confidentiality order. In response, ABT says that: (1) its rounding would impact the distance between two customers' residences by up to one city block and any difference in time would be negligible; (2) Gibbs' city traffic congestion justification does not apply to suburban routes; (3) the rounding up and down would average any insignificant difference; and (4) ABT has a strong interest in protecting the names and addresses of its customers.

Gibbs' motion is granted as to route schedules. ABT does not respond to Gibbs' evidentiary concerns or explain why disclosure pursuant to an "Attorneys' Eyes Only" provision would be insufficient to protect privacy concerns regarding the names and addresses of its customers. Gibbs is entitled to accurate route schedules to analyze his wage and hour claim and an "Attorneys' Eyes Only" provision in an amended confidentiality order is sufficient to address ABT's privacy concerns. Within seven days of the date of the opinion, the parties shall file a joint proposed Amended Agreed Confidentiality Order.

### C. Gibbs' Complaint About Austin Abt

Gibbs' Interrogatory No. 7 asks ABT to "[i]dentify any and all complaints Plaintiff made about Austin Abt and/or Billy Govis." Gibbs alleges that his coworker, Austin Abt, made fun of his skin condition in front of multiple co-workers, asking how he "made [his] skin like that?" First Am. Compl., Doc. 19, ¶¶ 21-24. Gibbs further alleges that when he complained about Austin Abt's conduct, Gibbs' supervisor, Billy Govis, stated that treatment like that was to be endured when it comes to a guy "whose name is on your uniform." *Id*. at ¶¶ 27-28. After stating certain

objections and pursuant to Federal Rule of Civil Procedure 33(d), ABT produced documents (Bates Range 90-92) which it stated contain responsive information. ABT further stated that it was not aware of any alleged complaints Gibbs made with regard to Austin Abt after August 16, 2019, the beginning of the statute of limitations period. Doc. 63-6 at 4.

Gibbs now moves to compel ABT to supplement its answer to Interrogatory No. 7. Gibbs says that he is requesting information about the complaint he made regarding Austin Abt to show ABT was aware of Gibbs' disability and regarded Gibbs as having a disability.[11] In its response brief, ABT notes that the alleged conduct occurred in August 2017 and based on the district judge's motion to dismiss ruling, the incident it time-barred. Doc. 18 at 8-9. ABT also asserts that it provided the requested information because its answer to Interrogatory No. 4 clearly shows that Gibbs' complaint about Austin Abt did not put ABT on notice that Gibbs suffered from any disability. Gibbs' Interrogatory No. 4 asks ABT to "[i]dentify when you first became aware of Plaintiff's medical condition(s) described in the Complaint." Doc. 63-6 at 3. ABT answered Interrogatory No. 4 as follows:

> Defendant states that while variations in Plaintiff's skin pigmentation may have been noticed by Defendant's employees who worked with Plaintiff, Plaintiff did not ever report that such variations in skin pigmentation were associated with a physical or mental impairment that substantially limited one or more major life activities. Answering further, Plaintiff did not ever report to Defendant that he experienced anxiety or any other condition that substantially limited one or more major life activities.

Doc. 63-6.

ABT's objections to Gibbs' Interrogatory No. 7 are overruled. First, Gibbs is seeking the information to show that ABT was aware of his impairment and regarded him as having an

---

[11] The ADA defines disability to include "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

impairment. The motion to dismiss opinion found that two alleged acts of disability discrimination that took place after August 16, 2019 are not time-barred, and information about Gibbs' Austin Abt complaint may show Defendants' awareness of his alleged disability. Doc. 18 at 9. Second, ABT's answer to Interrogatory No. 4 does not obviate its obligation to provide an answer to Interrogatory No. 7. Gibbs seeks different information through Interrogatory No. 7 than that which ABT has provided in answering Interrogatory No. 4. Moreover, though ABT asserts that Gibbs' Austin Abt complaint did not put ABT on notice that Gibbs suffered from any disability, Gibbs is not required to take ABT's word for it. Gibbs is entitled to test such assertion through appropriate discovery.

Having said this, however, Rule 33(d) allows a party to answer an interrogatory by producing business records by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). In response to Interrogatory No. 7, ABT specifically referred Gibbs to business records identifying Bates Range ABT 90-92 from which the answer to the interrogatory could be ascertained. "When a responding party invokes Rule 33(d), the moving party must show that the disclosures are inadequate, for example, because the information is not fully contained in the documents." *Data Mgt. Assn. Int'l v. Enterprise Warehousing Solutions, Inc.*, 2022 WL 16856414, at *10 (N.D. Ill. Nov. 10, 2022). Gibbs makes no showing that the documents identified in ABT's response do not fully answer the interrogatory. On this record, Gibbs has not met his burden of demonstrating that ABT's Rule 33(d)(1) response is inadequate. Accordingly, the Court denies Gibbs' motion to compel a supplemental answer to Interrogatory No. 7.

### D. Other Employees' Complaints

In his motion, Gibbs next asks the Court to compel ABT to produce documents regarding complaints of race, color, national origin, or disability discrimination or retaliation for the period

February 20, 2017 to the present, which were: (1) made by any employee who worked primarily in the warehouse at ABT's Glenview, Illinois facility, including employees who worked as drivers/helpers; or (2) made by any employee regarding Defendant Ricky Abt or Gibbs' former supervisor Billy Govis; or (3) made by Gibbs regarding Austin Abt or Billy Govis.[12]  With respect to his Interrogatory No. 21, Gibbs seeks information regarding lawsuits or other proceedings in which ABT or Ricky Abt was named which allege the same causes of action contained in the First Amended Complaint (discrimination based on race, national origin, or color or retaliation in violation of Title VII and violations of the ADA, Section 1981, the Illinois Human Rights Act, the IWPCA, or the BIPA). Doc. 63 at 9-10.  Gibbs is correct that other employees' complaints of discrimination may be relevant to establish a decisionmaker's discriminatory intent or the pretextual nature of an employment related decision.

In response to Production Requests Nos. 11 and 14, ABT agreed to: (1) produce documents related to reports of race and/or disability discrimination or retaliation made by Driver Helpers about ABT or Richard Abt between January 1, 2017 and March 31, 2020 and (2) identify Charges of Discrimination or lawsuits involving claims of race and/or disability discrimination or retaliation made by Driver Helpers between January 1, 2017 and March 31, 2020. Doc. 63-7 at 6-8.  In its response brief, ABT states that its answers to these requests covered: (1) the same forms of alleged discrimination, (2) the same department where Gibbs worked, and (3) employees who were supervised by Gibbs' supervisor, Bill Govis.  Given the limitations it applied, ABT states that the answer for all three of the discovery requests is "none."  ABT objects to producing any other information or documents as not proportionate to the needs of the case. Doc. 65 at 11.

---

[12] These categories of documents stem from Gibbs' Production Requests Nos. 11 and 14, as subsequently narrowed by Gibbs. *See* Doc. 63 at 8-9.

Gibbs now seeks documents related to other complaints of the same types of alleged discrimination or retaliation by any employee at the Glenview warehouse location. Generally, "other complaints of discrimination against an employer may be found relevant . . . if limited to the (a) same form of alleged discrimination, (b) the same department or agency where plaintiff worked, and (c) a reasonable time before and after the discrimination occurred—usually 3 to 5 years." *Corona v. City of Chicago*, 2023 WL 4665674, at *3 (N.D. Ill. July 10, 2023). ABT argues that its limitation to reports, charges, or lawsuits made by Driver Helpers is reasonable because "warehouse" is not a department and drivers and helpers do not work out of the warehouse. ABT explains that drivers and helpers start and end their workdays in the warehouse, but their shift is spent on the delivery trucks and in customers' homes. Gibbs' only response to ABT's warehouse objection is to cite Gibbs' pay record produced by ABT which states "Bonus Report – Fleet and Warehouse" at the top. Doc. 71-3. However, the same document indicates that Gibbs' "Department" was "Installer Helper L1." *Id*. Accordingly, on this record, Gibbs has not shown that he is entitled to warehouse-wide discovery of other employees' complaints of discrimination and retaliation of the same nature as Gibbs' claims.

Gibbs also wants ABT to produce similar complaints made by any employee against Defendant Ricky Abt. ABT's response brief does not specifically address the production of complaints against Ricky Abt. Ricky Abt is alleged to have engage in discriminatory and retaliatory conduct against Gibbs, including playing a role in his ultimate discharge. *See* Doc. 19. Thus, similar complaints by other employees against Ricky Abt are relevant and proportional to Gibbs' claims. Moreover, ABT has acknowledged the relevance of others complaints of discrimination and retaliation against Ricky Abt because it has already agreed to produce certain responsive documents regarding Ricky Abt in response to Production Request No. 11. Doc. 63-7

at 7. Further, ABT's conclusory and non-specific assertion that the limitations it applied in answering these discovery requests are proportionate to the needs of this case is insufficient. *See* Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes (2015 Amendment) (explaining that the 2015 amendment regarding proportionality was not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional"). Accordingly, ABT has not demonstrated that the request is improper, and Gibbs' motion to compel is granted as to similar complaints regarding Ricky Abt.[13]

The parties also disagree on the relevant time frame of Gibbs' requests. Gibbs seeks discovery from January 1, 2017 to the present. ABT agreed to produce documents between January 1, 2017 and March 31, 2020. "Generally, courts in the Seventh Circuit have limited discovery in employment discrimination cases to a period of three to five years, with some courts extending the bounds a bit further." *Speller v. Am. Ass'n of Neurological Surgeons*, 2021 WL 2186182, at *1 (N.D. Ill. May 28, 2021) (internal quotations omitted). The Court finds that an appropriate time frame documents related to other similar complaints is from January 1, 2017 to January 1, 2022.[14]

### E. Investigations Concerning Gibbs

Gibbs' Request for Production No. 19 asks ABT to produce documents and communications relating to "any and all investigation(s) concerning Plaintiff in any way." Doc.

---

[13] The Court has also previously concluded that Gibbs' complaint about Austin Abt is relevant and discoverable. Any complaints made by Gibbs about Govis are also relevant and discoverable.

[14] ABT's response brief does not specifically address Interrogatory No. 21. Doc. 65 at 11. Accordingly, with respect to Interrogatory No. 21, the request for other complaints of discrimination or retaliation is limited to similar complaints made by Driver Helpers and similar complaints against Ricky Abt for the period January 1, 2017 to January 1, 2022. Without any argument from ABT about Interrogatory No. 21, as to the BIPA and the IWPA, the Court finds lawsuits or proceedings alleging the same type of violations as alleged by Gibbs for the period January 1, 2017 to January 1, 2022 may be relevant and are discoverable.

23

63-7 at 10. ABT objected in part based on attorney-client privilege and produced a privilege log. Defendants' response brief explains that the documents identified in the privilege log relate to communications with Attorney Kathryn Hartrick, an employment lawyer Defendants retained to consult with on this matter after Gibbs filed his EEOC charge. Doc. 65 at 12. In his motion, Gibbs argues that Defendants' privilege log is deficient because the descriptions were insufficiently detailed to enable Gibbs to assess the privilege assertions. Specifically, Gibbs seeks an amended privilege log which reflects the date of each communication with Attorney Hatrick and identification of all individuals by name and capacity who were copied on, involved in or received/had access to the communications. On its face, the first entry on Defendants' privilege log is insufficient to establish that the attorney-client privilege attaches to the email correspondence withheld. The only description the privilege log provides with respect to the nature of the documents withheld in Item 1 is: "Email correspondence between Jennifer Naber (outside counsel), Beth Shapiro (in-house counsel), Kathryn Hartrick (outside investigator/attorney), and management employees regarding investigation into Plaintiff's allegations raised in April 19, 2020 and May 4, 2020 letters." Gibbs is entitled to the dates(s) of the communications and the name of the participants and their capacity. Fed. R. Civ. P. 26(b)(5)(A)(ii); *LKQ Corp. v. Kia Motors America, Inc.*, 2023 WL 3200236, at *5 (N.D. Ill. May 2, 2023). Accordingly, Gibbs' motion is granted in this regard and Defendants are ordered to provide an amended privilege log that identifies the dates, authors, and recipients of the email communications in Item 1 with specificity.

### F. Potential Comparators

In his Production Request No. 22, Gibbs seeks "personnel file and I-9 records of any and all current and former Abt employes who are identified in the Complaint and/or who are identified

as a potential witness in any F.R.C.P. 26(a)(1) disclosure(s)." Doc. 63-3 at 8. After meeting and conferring, Gibbs narrowed the scope of his request to limit the individuals from whom he was seeking personnel-related records to the eight individuals identified in his counsel's letter dated May 22, 2023 and "all Abt employees from Acapulco, Mexico who worked as drivers and/or helpers for Abt during Plaintiff's Employment Period." *See* Doc. 63-9. Gibbs now moves to compel all documents listed in his counsel's May 22, 2023 letter. He contends these documents are relevant because the employees whose personnel files he requests are potential comparators for his discrimination claims. *See Lane v. Riverview Hosp.,* 835 F.3d 691, 696 (7th Cir. 2016) ("[E]vidence that the employer treated better a similarly situated employee outside the plaintiff's protected class can provide some circumstantial evidence of discrimination.").

ABT's response brief explains that it supplemented its discovery responses and produced personnel information regarding one employee and three former employees. Doc. 65 at 13. ABT objected to producing information relating to a fifth employee, John Madarr, because he never held any comparable position to the position held by Gibbs. *Id.* Gibbs asked for information relating to three additional employees but ABT states that it cannot identify the employes based on the limited description provided by Gibbs. *Id.*[15] Finally, regarding Gibbs' request for personnel related documents for "all Abt employees from Acapulco, Mexico who worked as drivers and/or helpers for Abt during Plaintiff's Employment Period," ABT's counsel reported to Gibbs' counsel in an email that ABT does not request "that employees identify what country they were born in and therefore, it would be impossible for Abt to provide the requested information." Doc. 65-4 at

---

[15] Gibbs provided the following description regarding these three employees: (1) Hector [last name unknown] – worked as a driver and/or helper and goes by "Ivan"; (2) Marcus [last name unknown] – worked as a driver and/or helper and goes by "Miguel"; and (3) an individual who works or worked as a driver and/or helper and goes by "Minimal"- believed to be Kobi's brother. Doc. 63-9 at 2.

2.  In his reply brief, Gibbs does not dispute the adequacy of ABT's responses regarding John Madarr and the three employees who ABT was unable to identify; instead, he only addresses arguments related to the employees from Acapulco, Mexico who worked as drivers/helpers during his employment.  Gibbs therefore appears to concede that the only alleged production deficiency that remains is ABT's failure to produce documents relating to employees from Acapulco, Mexico who worked as drivers/helpers.

Gibbs disputes ABT's representation that it is unable to produce responsive documents regarding drivers/helpers from Acapulco, Mexico.  Gibbs provides a copy of a picture in which Santos Chico, one of his former partners, is wearing a blue ABT uniform shirt on which "Chico, Acapulco, Mexico" is embroidered. Doc. 69-8.  Gibbs further cites the event program for the 14th Annual Golf Benefit hosted by For the Autistic Kids Foundation on July 27, 2015, which contains a photograph and the caption states, "Willie and the Acapulco bros at Great America – September 2014." Doc. 69-8.  Willie is Defendant Ricky Abt's son. Doc. 50 at 8.  Moreover, the For Autistic Kids Foundation website states that "The Abt Family established the for autistic kids foundation to raise funds to broaden the public awareness and understanding of autism and for the research for the early detection, prevention, treatment, and cure for those with Autistic Spectrum Disorders." https://fak.abt.com.  Given this showing, ABT shall conduct a good faith and reasonable investigation into Gibbs' evidence and produce any responsive documents.  ABT shall also submit a supplemental response explaining the efforts engaged in to search for all available responsive information and documents.  As a result, Gibbs' motion to compel is denied without prejudice as to Production Request No. 22.[16]

---

[16] Gibbs' motion also mentions his Interrogatory No. 6, which seeks the identity of "any and all employees of Defendant who perform installations and/or vent cleaning services but who do not possess a valid license to drive." Doc. 63 at 12-13.  Gibbs claims that he was treated more harshly than less qualified employees from Mexico, claiming they were less qualified because they allegedly did not have a valid driver's license.

### G.    BIPA Claim and Ceridian

In Production Request Nos. 36-38 and 40, Gibbs requests various documents and communications, including written agreements, between ABT and Ceridian.[17]  ABT used a fingerprint scanning device to track employees' time, and Ceridian provided biometric timekeeping services to ABT during a portion of Gibbs' employment.  Gibbs argues that the requested documents are relevant to his claim that ABT violated the BIPA in Count VII of the First Amended Complaint.  Defense counsel represented that the documents responsive to these requests are the same documents which Gibbs received in response to his subpoena to Ceridian. Doc. 69-6 at 1.  Gibbs now requests that the Court order ABT to provide an affidavit confirming that no other responsive documents exists.  For its part, ABT argues that Gibbs' motion to compel on this issue should be denied because: Gibbs has not explained what further information from ABT not already provided by Ceridian he needs; Gibbs signed BIPA consent forms after he was hired; and Ceridian settled any BIPA claim with Gibbs a part of a class action.  Gibbs' reply brief adequately explains why the requested information is relevant to his BIPA claim despite the signed consent forms and settlement agreement which ABT was not a party to. *See* Doc. 71 at 3-6. Accordingly, Gibbs' motion to compel is granted as to these requests.  Again, ABT is not required

---

*Id*. ABT responds that the request for driver's license information is irrelevant because: (1)  this is not a failure to hire or promotion case; (2) a driver's license is preferred for employees who work on the trucks but is not a qualification; (3) and the request for driver's license information is a subterfuge to try to obtain information about immigration status which is irrelevant and improper.  Gibbs' reply brief does not respond to ABT's arguments in this regard.  Thus, on the current briefing and without any response from Gibbs as to ABT's specific arguments, Gibbs has not met his initial burden of demonstrating that the driver's license information he seeks is relevant to his claims.  His motion to compel is denied as to Interrogatory No. 6.

[17] Request Nos. 36-38 and 40 seek: (1) any and all documents and communications to, from, and/or with Ceridian HCM, Inc. and/or any of its employees (Request No. 36); (2) any and all documents and communications provided to Ceridian HCM, Inc. regarding Plaintiff (Request No. 37); (3) all documents and communications regarding LaBarre v. Ceridian HCM, Inc., Case No. 19-CH-06489, including without limitation any and all documents produced in response to any subpoena relative to said matter (Request No. 38); and (4) any and all written agreement(s) between Abt and Ceridian HCM, Inc. (Request No. 40).

to produce duplicative discovery. If no responsive documents exists other than the documents previously produced by Ceridian, ABT shall provide an declaration confirming that fact.

### H. Addresses of Employees Who Worked with Gibbs

In Interrogatory No. 5, Gibbs seeks the last known address for all ABT employees who were assigned to work alongside Gibbs. ABT raises four objections to Gibbs' motion to compel with respect to Interrogatory No. 5 that are without merit. First, ABT's objection that Interrogatory No. 5 does not request addresses is incorrect. Interrogatory No. 5 asks, in part, for ABT to "identify" employees who were ever assigned to work with Gibbs, and Gibbs defined the term "identify" to include present or last known address. Doc. 63-5 at 2; Doc. 63-6 at 3. Second, ABT argues that Gibbs did not raise this issue in any meet and confer session, so his motion contains an improper new request. This is also incorrect. Gibbs counsel raised this issue at the May 2, 2023 meet and confer session. *See* Doc. 60-1 at 7:8-10:9; *see also* Doc. 60 at 4. Third, ABT argues that Gibbs' request for the last know addresses of the employees he partnered with "is not reasonable because some of the individuals may have worked with him sporadically or for just one or two shifts." Doc. 65 at 15. ABT's argument is not well taken. Except for a limited "not reasonable" objection, ABT does not object to the addresses of former partners on the basis of relevance or proportionality. Moreover, ABT possesses the relevant information and has not supported its claim that any former partner of Gibbs "worked with him sporadically or for just one or two shifts." *Id*. Finally, ABT objects that the names on the list are not listed as witnesses in this case. Gibbs does not have to list these individuals as witnesses at this stage of the proceedings to be entitled to discover their last known addresses. Gibbs is entitled to the last known addresses of employees that worked alongside him in order to adequately investigate his claims and subpoena former employees for depositions and/or trial. *See* Fed. R. Civ. P. 26(a)(1) (requiring the disclosure of the

"name and, if known, the address and telephone number of each individual likely to have discoverable information."). For current employees, defense counsel has agreed to accept deposition notices and produce them for depositions without subpoenas. Doc. 60-1 at 8:21-9:5. However, this does not mean Gibbs is not entitled to discover addresses for current employees. *See Harman v. American Red Cross*, 2010 WL 1882002, at *1 (C.D. Ill. May 11, 2010). Gibbs' motion to compel is granted as to Interrogatory No. 5.

To sum up, Gibbs' Motion to Compel [63] is granted in part, denied in part, and denied without prejudice in part. ABT shall comply with these rulings within 21 days of this opinion.

## III. Civility and Professionalism

One final but important matter must be addressed. The briefing and the attached August 2023 email communications reveal a breakdown of civility and professionalism between Ms. Vucko and Ms. Naber. *See* Doc. 65-2, 65-3. To be clear, this Court will not tolerate incivility and lack of professionalism among counsel. *See Johnson v. Statewide Investigative Services, Inc.*, 2021 WL 825653, at *8 (N.D. Ill. March 4, 2021) (emphasizing "the importance of collegiality and the need for a high level of professionalism among attorneys in the conduct of discovery.").

As in *Johnson*, the Court reminds counsel of the relevant portions of four professional standards which govern lawyers participating in litigation in this Circuit: (1) We will practice our profession with a continuing awareness that our role is to advance the legitimate interests of our clients. In our dealings with others we will not reflect the ill feelings of our clients. We will treat all other counsel, parties, and witnesses in a civil and courteous manner, not only in court, but also in all other written and oral communications; (2) We will not, even when called upon by a client to do so, abuse or indulge in offensive conduct directed to other counsel, parties, or witnesses. We will abstain from disparaging personal remarks or acrimony toward other counsel, parties, or

witnesses; (3) We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety; and (4) We will speak and write civilly and respectfully in all communications with the court. Seventh Circuit's Standards for Professional Conduct, "Lawyers' Duties to Other Counsel," Std. Nos. 1, 2, 4 and "Lawyers' Duties to the Court," Std. No. 1. Moreover, the Seventh Circuit "expects judges and lawyers to make a mutual and firm commitment to these standards," which are designed to encourage us "to meet our obligations to each other, to litigants and to the system of justice, and thereby achieve the twin goals of civility and professionalism, both of which are hallmarks of a learned profession dedicated to public service." Preamble of the Seventh Circuit's Standards for Professional Conduct. *Johnson*, 2021 WL 825653, at *9.

Counsel are directed to read the Court's opinion in *Johnson v. Statewide Investigative Services, Inc.*, 2021 WL 825653, at *1-9 (N.D. Ill. March 4, 2021). The Court expects counsel to decrease the animosity towards each other and work cooperatively and expeditiously to complete discovery and move this case forward. If the tone of counsel in this litigation does not change, the Court will consider stronger measures, including sanctions, to further emphasize its commitment to civility and professionalism.

## CONCLUSION

For the reasons and to the extent stated above, ABT's Motion to Compel [62] is granted as to North Shore Amenities, the PPP loan application, the basis of the loan, the name of the loaning bank, the contact information for Two Junior Logistics and Amazon Flex, and tax returns for Gibbs and North Shore Amenities. Gibbs shall access his Incfile.com account, Zelle account at Wells Fargo, bank accounts, LinkedIn account, Indeed account, ZipRecruiter account, and email accounts to obtain responsive information and documents. Gibbs shall follow-up with the U.S.

Postal Service, the unidentified relative he lived with during the relevant time, and his former girlfriend to obtain responsive information and documents. Gibbs shall provide full and complete answers to Interrogatory Nos. 14 and 15, including the addresses of the employers he submitted applications to and details about the applications for employment and the names and addresses of employers he interviewed with and the details of the jobs. Gibbs shall take these steps and produce responsive information by November 6, 2023.

Further, Gibbs' Motion to Compel [63] is granted in part as to the assigned route schedules, similar complaints about Ricky Abt, a time frame of January 1, 2017 to January 1, 2022 for similar complaints, an amended privilege log, requests related to Gibbs' BIPA claim, and addresses of employees who worked with Gibbs, denied in part as to Gibbs' work email address, Gibbs' complaint about Austin Abt, warehouse-wide discovery of other employee complaints of discrimination, and driver's license information, and denied without prejudice in part as to the ESI discovery and personnel information regarding drivers/helpers from Acapulco, Mexico. ABT shall comply with these rulings by November 6, 2023.

Regarding the ESI discovery, counsel shall meet and confer in-person as many times as necessary prior to November 6, 2023 to resolve the issues. If any limited issues remain after the meet and confer process, a joint status report must be filed by November 13, 2023 detailing the parties' respective positions on disputed proposals, along with a copy of the transcript of the meet and confer session.

Finally, by October 23, 2023, the parties shall file a joint proposed Amended Agreed Confidentiality Order.

31

**SO ORDERED.**

Dated:  October 16, 2023

                                              Sunil R. Harjani
                                              United States Magistrate Judge